*The materials facts and the points made in the cause [ * 202 ] will sufficiently appear in the opinion of the Court, as it was delivered by
Parsons, C. J.
The trustees have been examined on interrogatories, and from their answers we are to decide whether they have discharged themselves.
The whole transaction arises from, of is connected with, policies of insurance subscribed by the trustees and others, in a private office kept by Thomas Burley; and as the trustees have declared on oath that, on examination of Burley’s books and accounts, they believe the statement therein to be true, the facts disclosed in it must be considered as part of their answers; and if the plaintiff had chosen to have had Burley’s statement on his oath, he might have been summoned as a trustee.
Clap assured for the principals on the Seaflower 1,000 dollars, at a premium of 33£ per cent., and there was a total loss. On settling this policy, allowing Clap his premium, and the broker his demand for the policy and his commissions on the loss, there is due from Clap to Hudson and Smith 656 dollars, 8 cents.
Wheeler was an underwriter for 200 dollars on the same policy; and on adjusting it he is indebted to Hudson and Smith 131 dollars, 22 cents.
For these sums must they be chargeable respectively as trustees, unless their demand for a set-off is allowed, or the lien which the office-keeper claims on it is admitted.
In all policies underwritten in this office, the assured named is alone insured, and not his assigns, or any other person, without the subsequent assent of the assurers. And a clause is inserted, that all sums due from the assured to the office for premiums are to be paid or deducted from any loss that may arise on the policy (a).
*154 Clap claims a right to setoff the premium of 333 dollars, 33 cents, due-to him on his insuring for Hudson and Smith 1,000 [ * 203 ] dollars on the Isabella at 33¿ per cent., on * which there was no loss. And Wheeler claims an offset of 33 dollars, 33 cents, for insuring 100 dollars on the same policy. The office-keeper insists on a prior lien to pay 466 dollars, 67 cents, premiums due to other underwriters on the same policy. He further insists on a lien to pay 50 dollars to P. B. Rogers for his insurance for Hudson and Smith of 1,000 dollars at 5 per cent, on the Sally, on which there was no loss.
The lien for the payment of thé 50 dollars must be allowed, as it appears to be a sum still due from Hudson and Smith to the office-keeper for the use of Rogers. The lien for the premiums on the Isabella, and the set-off claimed by the trustees, deserve a further consideration.
The plaintiff opposes this allowance, because it appears that, after the policy on the Isabella was subscribed, Hudson and Smith became insolvent, and assigned the policy to certain of their creditors ; that the underwriters assented to this assignment, and five of them, including the trustees, subscribed their assent on the policy-; that, in consequence of this, Hudson and Smith were discharged of their obligation to pay the premium, and the underwriters could demand it of the assignees only; that the assurers expected that the assignees were to pay the premium, and would have made themselves responsible by giving their notes for it according to invariable usage.
But in behalf of the trustees, it also appears that, after five of the assurers had subscribed their assent to the assignment, and before the other assurers had opportunity, the vessel arrived safely, and the negotiation was not completed, and the policy remained with the office-keeper, with whom the assignees had placed it; that the office-keeper demanded the premiums of the assignees, who refused payment, assigning as a reason that he had charged it to the account of Hudson and Smith, and might and ought to deduct it out of the loss on the Seafloiver.
[ * 204 ] * As by the assignment with the assent of the underwriters, the assignees would have been entitled by the policy to an indemnity for any loss that might have happened after the commencement of the voyage insured, before the assignment as well as after, there was a sufficient consideration, as between the assignors and assignees for the latter to be answerable for the premium.
This consideration is also sufficient as between the assignees and the assurers; for the latter, in consequence of their assert to the *155 assignment, have made themselves liable to the assignees for any future losses, for which, if they had not assented, they would not have been answerable. For the assignors, by their sale of the interest insured, could demand payment of no loss happening after-wards.
The policy remaining in the possession of the office-keeper is not material, for he is the agent of both parties. And if, instead of intelligence that the Isabella had safely arrived, she had in fact been lost, the assignees could have compelled payment from those of the assurers, at least, who had assented to the assignment, and who might have deducted the premiums from the loss.
The only question is, whether upon the whole of this transaction the assignors are discharged from their obligations to pay the premiums to the several underwriters, or to any of them.
This discharge cannot be admitted, unless with the assent of the assurers, because they were once entitled to the premiums from the assignors. This assent may either be express, or may be proved by usage. And if proved either way, it may avail, because there is a sufficient consideration from the assignors, by waiving all claims for losses that might have happened before the assignment. An express assent is not supposed; but the usage is relied upon as proof. Whether the usage is correctly stated, we know not; but in this action we must take it to be stated by the trustees. And if the statement * in any part be doubtful, we must construe it against the [ * 205 ] trustees, who might have used expressions in which there should be no doubt.
The usage stated appears to be — that when the assured shall alien the property assured, and ■ shall assign. over the policy to the purchasers, if the assurers do not assent, they may demand the premiums of the assured, and the policy is discharged from the time of the alienation ; for after that time the assured had no interest to be protected by the policy. But if the assurers assented to the assignment, the assignees would be entitled to the indemnity secured by the policy, from the commencement to the termination of the voyage insured, in the same manner as if they had been originally the assured. And that it is the invariable practice for the assignees to secure the payment of the premium, by giving their note to the assurers. This is certainly a reasonable usage. For if the assignees are to have the full benefit of the insurance, they ought to pay the premium which is the price of it.
The trustees state that, in this case, it was expected that the assignees were to pay the premium, and without this expectation, no good reason can be given, why the assurers should voluntarily assume further risks upon the credit of the original assured, who were known *156 to be insolvent. And it is further stated that the assurers demanded the premium of the assignees, who refused payment, not because they were not answerable, but because the office-keeper having charged the premium to Hudson and Smith, he might and ought to deduct it from the loss on the Sally.
But it is objected, that the assurers did not in fact receive the note from the assignees, and so have no remedy against them.
This want of remedy is owing to their own loches or to accident, and the assignors ought not to suffer prejudice by it. [ * 206 ] The assurers ought not to have assented * to the assignment, until they had received security from the assignees; and if they have, they must suffer by their misplaced confidence, and not the assignors. But they have the same remedy by action, which they had against the assignors. For the policy acknowledges the receipt of the premium, and no security was given by the assured, And the same difficulty exists in supporting an offset of the premium against the express terms of the policy. And if paroi evidence to explain the transaction as against the assignors can be given, for the same reason, the usage may be given in evidence against the assignees.
This reasoning results from the usage, as stated by the trustees. But if the usage had been for the assurers, on assenting to the assignment, to hold the assignors still answerable for the premium, and to take new notes from the assignees as a mere cumulative security, the conclusion would have been very different.
If, however, the receiving the new security would be assenting to the discharge of the assured, and the not receiving it was owing to the negligence of the assurers in not seasonably demanding it, we think the assignors ought not to suffer by that negligence.
We are, therefore, of opinion, that the offset cannot be allowed, because Hudson and Smith are discharged from their contracts of insurance on the Isabella with Clap and Wheeler, as they assented to the assignment, which, from the usage they themselves have stated, is a discharge of the principals.
For the same reason, the lien set up by the office-keeper for the premiums claimed from the principals by the underwriters, who assented to the assignment, cannot be admitted. But the lien in behalf of the underwriters, who did not assent to the assignment, must be allowed. These last premiums amount to 233 dollars, 33 cents, which added to the premium due Rogers on the Sally’s insurance, the sum is 283 dollars, -33 cents, to be deducted [ * 207 ] * from the respective sums due from the trustees. And we think it ought to be so deducted, that the trustees may be affected in proportion to their respective balances.
*157 By this rule Clap will have deducted 236 dollars, 11 cents, from his balance, reducing it to 419 dollars, 97 cents ; and Wheeler will have his balance reduced to 84 dollars. For these sums respectively they must stand charged as trustees, and executions accordingly issue against them.
After the foregoing opinion was delivered, a question arose as to the taxation of costs in this action, and the Court was moved to give the clerk some directions on this subject, the counsel on both sides alleging that in the Common Pleas there was no uniform rule of taxation.
The Court observed that the costs to be taxed for or against trustees must depend on the construction of the statute of 1794, c. 65., commonly called the trustee act.
Persons who are summoned as trustees may, on examination, appear to have effects of the debtor in their hands, or to have none; and they may reside either in the county in which the writ is returnable, or elsewhere.
If the supposed trustee has no effects, it is. his interest to appear on the return of the writ, and, agreeably to the statute, declare in writing that he had no effects, and that he submits himself to an examination on oath. If, on this examination, he ought to be discharged, he is entitled to costs, whether the examination be had at the same or any subsequent term, provided he be always ready to be examined when the creditor shall propose his interrogatories; for the delay of the creditor shall not prejudice him. But if, on his first examination, he do not discharge himself, although he may, at a subsequent term, appear to have no effects by a disclosure of new facts, * he cannot have costs. And if the Court below [*208] shall, through mistake, adjudge him to be trustee on his first examination had without delay on his part, if, on appeal, he should on the same examination be discharged, he will be entitled to his costs. In these cases, if the supposed trustee do not live within the county where the writ is returned, he shall have, besides his legal costs, such further costs as, in the discretion of the Court, shall be a reasonable compensation for his time and expenses.
If the trustee does not submit to an examination at the first term, but is discharged on his examination at a subsequent term before judgment be rendered against the debtor, he can have no costs, unless he is a resident without the county, and then he shall have his costs.
If the creditor fail in his action against the debtor, or discontinue his suit against any trustee, who has submitted to an examination at the first term, the trustee shall have his costs; but he can have no *158 costs, unless he submit himself to an examination at the first term; and this rule applies, whether he admits or denies that he has effects.
Heard, for the plaintiff.
Paine, for the defendants.
If execution be awarded against the effects of a debtor in the hands of a trustee, which he does not satisfy, but a scire facias is issued to have execution against his own estate, and such exe cution be awarded, n'a costs against him are allowed. But the creditor may fail in his scire facias, either because the trustee, having been adjudged trustee in the original suit, has, in fact, delivered all the effects of the principal debtor towards satisfying the execution, or because it appears on his examination upon the scire facias that he never had effects. In the former case the trustees shall recover costs ; but in the latter case he shall pay the costs of the scire facias, if he reside within the county; otherwise he shall, in this last case, also, recover costs.
There is a particular case in which the Court may, at its [ *209 ] discretion, order the supposed trustee to pay costs. If * he reside within the county, and does not submit to an examination the first term, but is discharged on a subsequent examination, either in the original suit or upon scire facias, then the Court may order him to pay, out of his own estate, all the costs arising to the plaintiff after the first term, and until he shall submit to an examination, if he shall have judgment against the debtor, and shall not obtain satisfaction for those costs out of the effects of the debtor in his own hands, or in the hands of any trustee, unless the supposed trustee had a reasonable excuse for not submitting to an examination at the first term. The words of the statute are, “ unless such costs shall be duly recovered against the goods, effects, or credits of a principal in the hands of a trustee.” But the manifest intent of the statute is, to mulct a supposed trustee when, by his negligence in submitting to an examination, the creditor has been at expense in prosecuting a fruitless suit against his debtor. But if the creditor is indemnified, as to the costs, out of the debtor’s effects, whether in his own hands or in the hands of any trustee, the intent of the statute is satisfied. Consequently, any person who, having effects of the debtor in his hands, is adjudged trustee either in the original suit or on scire facias, is not liable to pay costs out of his own estate, as the cost may be satisfied by the debtor’s effects in his hands.
In the case before the Court, as the persons summoned have been adjudged trustees on the scire facias, no costs can be taxed against them.

 Livermore vs. Newburyport Ins. Co. 2 Mass. 232. Dodge vs. U. M. Ins. Co. 17 , Mass. 471