GERRINGER v. NORTH CAROLINA HOME INSURANCE CO.

(Filed November 17, 1903.)

1. INSURANCE—*Insurable Interest—Equitable Interest.*

A person holding an equitable interest in property, such interest
being known to the agent of the company, has an insurable
interest therein.

2. INSURANCE—*Fire Insurance—Waiver.*

The failure to file proofs of loss within the time required by a
policy does not work a forfeiture thereof, but unless waived by
the company no action can be brought until the expiration of
the required time after the filing of the proofs.

3. INSURANCE—*Fire Insurance—Proofs of Loss—Waiver.*

The denial of liability by a fire insurance company dispenses with
the necessity of filing proofs of loss.

ACTION by C. D. Gerringer and John H. Gerringer against
the North Carolina Home Insurance Company, heard by
Judge *O. H. Allen.* and a jury, at September Term, 1903, of
the Superior Court of ALAMANCE County. From a judg-
ment for the defendant the plaintiffs appealed.

*Parker & Parker,* for the plaintiffs.
*Scales, Taylor & Scales* and *Charles M. Stedman,* for the
defendant.

CONNOR, J.  This is an action on an insurance policy
issued by defendant company to the plaintiff Charles D. Ger-
ringer, "loss, if any, payable to John H. Gerringer and the
assured, as their interests may appear."  The policy is in the
form prescribed by the insurance law of the State, known as
the "Standard Fire Insurance Policy."

It was shown by competent testimony that the lot upon

which the dwelling house covered by the policy was located was conveyed to plaintiff Charles D. Gerringer by N. L. Gerringer by deed duly proven but not recorded until after the fire.

C. D. Gerringer executed two mortgages on said property, which were duly recorded. Joshua Gerringer, a witness for the plaintiff, testified that C. D. was his son. That he left home and for several months witness did not know where he was. In March and February, 1902, witness represented him. That the house was insured and witness had found the policy among his son's papers. Mr. Albright was agent of the defendant company. The mortgagees demanded their money. John H. Gerringer, an uncle of C. D., furnished the amount, $260, with which to pay the mortgage debts, and they were assigned to the witness. Witness got N. L. Gerringer to execute a deed to John H. Gerringer to secure payment, and he gave to witness a bond obligating himself to convey to him the property upon payment of the amount advanced. This deed was recorded March 21, 1902, and on the same day the bond was executed. Witness on same day notified the agent how the matter had been arranged; told him all about the arrangement, and he, the agent, wrote across the policy, "Loss, if any, in absence of C. D. Gerringer to be paid to J. H. Gerringer," and signed it. During the month of June, 1902, Albright came to witness while at work in a cornfield and brought the policy sued on and said it was just like the other policy, asking witness to take it in place of and surrender the first policy, which witness did, paying the small amount which Albright said was due on the premium. Albright said that it was all right. This was after witness had told him about the condition of the title to the property. The house was built on the lot after the first deed was made, costing about $1,500. It was burned July 22, 1903. Witness, in the entire transaction, was acting for his

son Charles D. Gerringer.　He had a conversation with Albright two or three weeks after the fire.　Albright said that Charles D. Gerringer had the house insured when he had no title to the property.　Witness told him that he had the deed and asked him what the company was going to do. Albright said that he had sent a man to investigate and did not know what the company would do.　Witness had other conversations with Albright, a "half a dozen or more," in which he said that he hoped they would get the matter adjusted.　About two months prior to the bringing of this action in April, 1903, Albright told witness that he understood the company would not pay the loss.

J. H. Gerringer testified for the plaintiff that immediately after the fire he had notice written and sent to Albright notifying him of the fire.　In about a week he saw Albright, who said that he had received the notice and sent it to the company; that he had not heard from it, but would write again.　No proof of loss was ever filed.

His Honor upon the foregoing evidence sustained a demurrer and the plaintiff excepted, and from a judgment dismissing the action appealed.

The appellant contends that Charles D. Gerringer had an insurable equitable interest in the property, and that the condition of the title being known to the agent of the defendant, his knowledge was the knowledge of the company.　The case comes clearly within the principle announced by this Court in *Grabbs v. Ins. Co.,* 125 N. C., 389, in which *Douglas, J.,* says: "Having thus an equitable, if not a legal, title to the land, they had an insurable interest therein."　The opinion is amply sustained by the authorities cited.　We do not think it necessary to do more than cite with approval the unanimous opinion of the Court in that case.　There can be no question that as J. H. Gerringer was, in the entire transaction, acting for his son, the status of the title to the

lot is the same as if the son in his own proper person had conducted the negotiation. Joshua Gerringer holds the legal title in trust, first, to secure the amount advanced by him to pay the mortgage debts, and then to convey to J. H. Gerringer, who would hold in trust for Charles D. Gerringer. This vests in both Charles D. and Joshua an insurable interest. If the jury believe the evidence, and find that these facts were known by the agent of the company, it will not be permitted to deny its liability on the contract. We cite with approval the language of *Mr. Justice Douglas* in *Grabbs v. Insurance Co., supra:* "We think the rule is well settled that where an insurance company, life or fire, issues a policy with full knowledge of existing facts, which by its terms would work a forfeiture of the policy, the insurer must be held to have waived all such conditions, at least to the extent of its knowledge, actual or constructive. It cannot be permitted to knowingly issue a worthless policy upon a valuable consideration. An implied waiver is in the nature of an estoppel *in pais,* which might well be enforced by any court of equity under such circumstances." It would seem that common fairness would demand that upon a full, frank disclosure of the condition of the title to the property made to the agent of the company at the time of or before the issuing of the policy, and as the basis therefor, the agent should inform the applicant that he had no insurable interest, if such was the case, or, in default thereof, bind his principal to perform its contractual obligations. This is nothing more than the application to the contract of insurance of the well-settled elementary principle that if one fails to speak when it is his duty, he shall not thereafter be permitted to do so for the purpose of avoiding a liability assumed at the time of such failure. If there be any concealment of fraudulent representation of material facts by the insured, the same principle relieves the insurer from liability. The contract of insurance must be

the result of fair, honest disclosures of all facts material to the risk assumed. These principles are recognized and enforced by all of the courts, both State and Federal. That notice to the agent of all matters affecting the risk is notice to the company is well settled by abundant authority. _Horton v. Ins. Co._, 122 N. C., 499; 65 Am. St. Rep., 717.

The defendant, however, says that by the terms of the policy it was the duty of the insured, within sixty days after the fire, to file proofs of loss, and that failure to do so constitutes a complete defense to this action. The plaintiff contends, first, that by a proper construction of the language of the policy the failure to file proofs of loss within sixty days does not work a forfeiture of the policy; and, second, that if it should be held to do so such requirement was waived by the action of the agent. This contention presents to this Court for the first time the question as to what effect a failure to file proofs of loss within sixty days will have upon the right of the insured to enforce the payment of the policy. It will be observed that in certain respects and upon certain contingencies the policy is declared to be void, whereas in other respects the assured assumes the discharge of certain duties; for instance, "this entire contract shall be void if the insured has concealed or misrepresented, etc." Again, "this entire policy, unless otherwise provided, shall be void if the insured now has or shall hereafter make or procure any other contract of insurance, etc." "If fire occur the insured shall give immediate notice of any loss thereof in writing to this company, protect the property from further damage, etc., and within sixty days after the fire, unless such time is extended in writing by this company, shall render a statement to this company, etc." "The insured, as often as required, shall exhibit to any persons designated by this company all that remains of any property herein described, etc." "No suit or action on this policy for the recovery of any claim shall be

sustainable in any court of law or equity until after full compliance by the insured with all the foregoing requirements, nor unless commenced within twelve months next after the fire."

This Court has uniformly held that where it is expressly provided that the policy upon certain contingencies shall be void, effect will be given to such language. *Hayes v. Ins. Co.,* 132 N. C., 702; *Biggs v. Ins. Co.,* 88 N. C., 141; *Sossamon v. Ins. Co.,* 78 N. C., 145; *Sugg v. Ins. Co.,* 98 N. C., 143.

Mr. Ostrander, in his work on Fire Insurance, section 223, says: "The requirement that the proof of loss shall be furnished within a stated time is not in the form of a condition or of an express warranty. Failure to comply will not prevent a recovery under the policy." A distinction is made between those conditions and provisions accompanied by the declaration that a failure to comply with them will render the policy void and those stipulations which are mere promises on the part of the insured to do the acts required after the fire, and the distinction is clearly established by many well-considered cases. In stating the rule of the modern cases upon the subject, it is said in 13 American & English Encyclopedia (2 Edition); p. 329: "The foregoing statement represents the rule upon which the authorities are manifestly coming to agree, although it is not to be denied that such rule is not yet uniformly established." In *Hall v. Ins. Co.,* 90 Mich., 403, the Court says: "We think it was intended that these provisions relating to the method of adjustment of loss and payment thereof should stand by themselves, and that they furnish their own penalty for failure to comply with the strict terms of the policy, namely, that the claim should not be due until sixty days after the full completion of all the requirements contained therein, and that no action should be commenced after six months from the date thereof." In *Steele*

*v. Ins. Co.,* 93 Mich., 81; 18 L. R. A., 85, the Court in con-
struing the several provisions in the policy uses the following
language: "This omission in an instrument replete with clear
and explicit declarations of forfeiture is worthy of note. The
presence of the declaration of forfeiture in every other in-
stance and its absence in this is clearly not an oversight.
Time is not made the essence of the provision relating to
proofs, and in the paragraph relied upon by the defendant the
words 'until after' import order or sequence rather than an
intent to make performance within the time specified the
essence of the requirement. The selection of this phraseology
seems to be inconsistent with such a purpose. The language
has reference to the thing to be done before suit is brought
rather than the time within which it is to be done." In
*Rheims v. Ins. Co.,* 39 W. Va., 672, it is held that "proofs
of loss are no part of the contract of fire insurance, nor do
they create the liability to pay a loss; they serve to fix the
time when it becomes payable and when an action may be
commenced to enforce a liability." To the same effect is
*McMaster v. Ins. Co.,* 55 N. Y., 222; 14 Am. Rep., 239;
*Coventry v. Ins. Co.,* 102 Pa. St., 281. In *Kanweiler v. Ins.*
*Co.,* 57 Fed. Rep., 562, it is said: "A failure to furnish the
proofs of loss within thirty days did not work a forfeiture
of the policy. It merely delayed the date when the loss
would become payable, the insurer having sixty days after the
proofs were furnished to make payment or replace the prop-
erty destroyed." See also *Kenton v. Ins. Co.,* 90 Ky., 236.

We adopt with approval the language of the Court in
*Rheims v. Ins. Co., supra:* "The foregoing authorities and the
weight of others we have had an opportunity of examining
have a strong tendency to show that where the condition in a
policy requires proofs of loss to be furnished in a specified
time, it is to be construed liberally, and the insurer cannot
defeat the policy on that ground, when strict compliance has

been excused by the acts or conduct of the agents of the insurance company."

We are therefore of the opinion that a failure to file proofs of loss within sixty days, as required by the policy, did not work a forfeiture of the policy, but that, unless waived by the company, no suit or action can be brought until the expiration of the sixty days after the filing of the proofs of loss, and not more than twelve months after the expiration of the sixty days, as held by this Court in *Muse v. Ins. Co.,* 108 N. C., 240. *Dibbrell v. Ins. Co.,* 110 N. C., 193; 28 Am. St. Rep., 678; *Lowe v. Ins. Co.,* 115 N. C., 18.

Failure to file the proofs of loss will not work a forfeiture of the policy, but precludes the plaintiff from maintaining an action "until after sixty days" from the filing thereof. The provision requiring the insured to file proofs of loss, contained in the policy, is reasonable, and read in the light of the further provision that "no suit shall be brought," etc., protects the company from an action until it has been complied with unless waived by some action on its part. In this case, while we would hold that the testimony in regard to the action of the agent should be submitted to the jury upon the question of waiver of the duty to file proofs of loss within sixty days, if material, such conduct would not waive the right to demand compliance with the requirements before the action was brought. In the view which we have taken of the case, however, the question of waiver to file within the sixty days is immaterial.

Does the denial of liability dispense with the necessity altogether of filing proofs of loss? May on Insurance (4 Edition), section 469, thus lays down the law, which seems to be fully sustained by the authorities cited: "A distinct denial of liability and refusal to pay on the ground that there is no contract, or that there is no liability, is a waiver of the condition requiring proofs of loss. It is equivalent to a declara-

tion that they will not pay. though the proofs be furnished; and to require the presentation of proofs in such a case, when it can be of no importance to either party, and the conduct of the party in whose favor the stipulation is made has rendered it practically superfluous, is but an idle formality, the observance of which the law will not require. The Supreme Court of the United States in *Life Ins. Co., v. Pendleton,* 112 U. S., 696, uses the following language: 'The plaintiffs in error further contend that the charge was erroneous in holding that no formal proof of the death of S. H. Pendleton was necessary in this case. On this point the charge was as follows: 'As to the proof of loss not being filed, it is conceded notice of the death was given. If, when that was done, the agents of the company repudiated all liability and informed the parties that the policy had lapsed, then no proof of loss was required by them, and the failure to file it cannot alter the case.' We think that there was no error in this instruction. The weight of authority is in favor of the rule that a distinct denial of liability and refusal to pay, on the ground that there is no contract or that there is no liability, is a waiver of the condition requiring proof of loss or death. It is equivalent to a declaration that they will not pay, though the proof be furnished.' *Mr. Justice Bradley* further says that "The preliminary proof of loss or death required by a policy is intended for the security of the insurers in paying the amount insured. If they refuse to pay at all, and base their refusal upon some distinct ground, without reference to the want or defect of the preliminary proof, the occasion for it ceases and will be deemed to be waived. And this can work no prejudice to the insurers, for in an action on the policy the plaintiff would be obliged to prove the death of the person whose life was insured, whether the preliminary proofs were exhibited or not.' "

So in our case the failure to file the proofs of loss does not

relieve the plaintiff of the duty of proving that in all other respects he had complied with the terms of the policy, the value of the property and any other facts material and necessary to his recovery, leaving open to the defendant to make such defenses as might be available to it.

In *Thwing v. Insurance Co.,* 111 Mass., 93, *Mr. Justice Gray,* afterwards of the Supreme Court of the United States, says: "Nor can the insurance company be now permitted to avail itself of the want of formal notice and proof of this claim in order to defeat a recovery. When an insurer, with knowledge of a claim made under a policy, rests his defense exclusively on other grounds, he is deemed to have waived all objections to the sworn statements and sufficiency of the notice and proof of loss." The Supreme Court of Connecticut, in *Norwich v. Ins. Co.,* 34 Conn., 561, says: "There is no error in that part of the charge which instructed the jury that the suit was not prematurely brought. There was a provision in the policy that the loss was payable at any time within sixty days after notice and preliminary proofs to the underwriters. Had the matter gone through the formal stages provided for in the policy. and the proofs been made without any denial of all liability on another ground, then no suit could have been sustained on the policy until sixty days had expired. This clause was for the protection or convenience of the underwriters; but when they waived the preliminary proofs they also waived the benefit of this stipulation and rendered it nugatory. It would be absurd to say that they still retained the right to have sixty days within which to pay a loss which they had declared that they would not pay at any time nor under any circumstances." In *Grange Mill Co. v. Ins. Co.,* 118 Ill., 396, the Court uses the following language: "It is said there is no proof of loss given by the assured. That fact was waived by the company's placing their refusal on the sole ground that the assured had no title to the property

GERRINGER v. INSURANCE CO.

destroyed." In *Doggett v. Order of the Golden Cross,* 126 N. C., 477, *Mr. Justice Montgomery,* speaking for the Court, said: "If an insurance company should refuse to pay the amount of the policy, or deny its liability upon an independent ground, or put its refusal exclusively on other grounds, before proofs of loss are made and before the expiration of the time within which such proofs are by the terms of the policy to be made, such denial and refusal would constitute a waiver of the condition requiring notice and proofs of loss. Such a denial and refusal would be just the same as a declaration and a notice to the beneficiary that payment would not be made in any event. The law does not require a vain thing to be done, and such a refusal and denial would make it unnecessary to give notice and proofs of death, since the company had refused absolutely to pay for such reasons." *Dibbrell vs. Ins. Co., supra,* at p. 205.

The principle is illustrated by the case of *Felton v. Hales,* 67 N. C., 107, which was an action for the recovery of property alleged to be held by the defendant as bailee. He set up title in himself, and alleged further that there had been no demand. The Court said: "This Court thinks that inasmuch as the defendant in his answer set up title to the mill and claimed it as his absolute property, no demand was necessary. *Cui bono* make a demand?

These authorities seem to settle the question that the defendant company, by its denial of liability, waived the filing of the proofs of loss. For the reasons and upon the authorities herein given, we think his Honor was in error in sustaining the demurrer. The case should have gone to the jury under proper instructions from the Court.

It must be conceded that the more modern cases, both in this and other courts, cannot be reconciled with some expressions used in *Boyle v. Ins. Co.,* 52 N. C., 373, and *Woodfin v.*

133——27

*Ins. Co.,* 51 N. C., 558. The question involved has undergone thorough examination in the State and Federal Courts in recent years, and the rights and liabilities of insured and insurers more clearly defined and brought into harmony with the conditions of modern life in its relation to life and fire insurance contracts.

New trial.