ATLANTIC JOINT STOCK LAND BANK OF RALEIGH v. W. H. FOSTER AND WIFE, DOROTHY L. FOSTER, A. L. OSBORNE, COY ELLER, GURNEY P. HOOD, COMMISSIONER OF BANKS, DEPOSIT & SAVINGS BANK, INC., JAS. McCRAW, INC., L. C. HAFER AND U. L. HAFER, DOING BUSINESS UNDER THE FIRM NAME OF ALEXANDER MOTOR COMPANY, COLUMBIA CASUALTY COMPANY, ASHE MOTOR COMPANY, INC., MOTOR SERVICE COMPANY, JENKINS HARDWARE COMPANY, INC., THE BANK OF NORTH WILKESBORO, YADKIN VALLEY MOTOR COMPANY, GWYN-WRENN INSURANCE AGENCY, INC., C. C. WAGONER AND IRA G. ROYSTER, ERNEST ELLISON AND MARYLAND CASUALTY COMPANY, J. M. BROWN, TRUSTEE AND RECEIVER FOR THE USE OF W. B. SOMERS, W. B. SOMERS, JOHN M. YATES, THE BANK OF YADKIN, ASSIGNEE OF DIXIE BOND & MORTGAGE COMPANY, HARPER MOTOR COMPANY, THE STATE OF NORTH CAROLINA, E. B. SOMERS, TRUSTEE FOR W. B. SOMERS, KYLE HAYES, TRUSTEE, AND D. J. BROOKSHIRE, J. M. BUMGARNER, G. G. ELLEDGE AND A. G. HENDERSON.

(Filed 10 April, 1940.)

1. **Insurance § 21—**

The rights of the parties under a loss-payable clause in a policy of fire insurance will be determined in accordance with the terms and provisions of the contract, which derive no extra validity by reason of the fact that the form is prescribed by law, Michie's Code, 6437.

2. **Insurance § 14—**

The assignment of an insurance policy is governed by rules pertaining to other assignments as to requisites, validity, operation, and effect.

3. **Insurance § 21—Attachment of standard loss-payable clause to fire insurance policy amounts to virtual assignment of the policy.**

A loss-payable clause in favor of the mortgagee, written in accordance with the statutory form, and the delivery of the policy to the mortgagee creates a separate contract between the insurer and the mortgagee upon which the mortgagee may sue to recover loss, C. S., 446, and no act or omission on the part of the mortgagor can affect the mortgagee's right to recover, and the transaction amounts to a virtual assignment of the contract assented to by the insurer by its attachment of the loss-payable clause and delivery of the policy to the mortgagee.

**4. Same—Whether mortgagee failed to exercise due diligence to collect proceeds of fire insurance policy held for jury.**

Certain structures on the property mortgaged were insured with loss-payable clause in favor of the mortgagee, and the policy was delivered to the mortgagee in compliance with the stipulations contained in the mortgage. A structure valued at much less than the mortgage debt burned, but no notice or proof of loss was given insurer either by the mortgagor or by the mortgagee, and the evidence failed to disclose that either had knowledge that the structure had burned. Several years thereafter the mortgagee, upon the mere request of the insurer, surrendered the policy to the insurer for cancellation. Foreclosure proceedings were instituted, and the personal representative of the deceased mortgagor resisted same on the ground that the mortgagee was liable for the loss of the proceeds of the fire insurance by reason of its failure to use due diligence to collect the amount due on the policy and apply same to the debt. *Held:* Since the mortgagee had possession of the policy with the right to sue on same and apply the whole of the proceeds to the debt, mortgagor not being entitled to any part thereof, whether the mortgagee failed to exercise due diligence to collect on the policy should have been submitted to the jury, there being no evidence of estoppel by conduct on the part of the mortgagor.

**5. Mortgages § 30e—**

The foreclosure of a mortgage may be enjoined pending the determination of the question of the mortgagee's liability for its failure to exercise due diligence to collect on a policy of fire insurance on the mortgaged premises and apply the proceeds to the mortgage debt.

**6. Mortgages § 9—**

It is error for the trial court to charge the jury that as a matter of law the mortgagee was entitled to add to the mortgage debt the amount of insurance premiums paid by the mortgagee when there is evidence that the mortgagee voluntarily took out the policy on property which had theretofore been destroyed by fire, and no evidence that the mortgagor had failed to pay fire insurance premiums as required by the mortgage.

APPEAL by defendants, Dorothy L. Foster, administratrix of the estate of W. H. Foster, deceased, A. L. Osborne and P. E. Brown. New trial.

The plaintiff brought this proceeding to foreclose a mortgage made to it by W. H. Foster and wife, Dorothy L. Foster, on certain lands of the defendants in Wilkes County, alleging default in the payment of the notes secured by the mortgage deed and breach of other conditions in the mortgage which accelerated the due date. The plaintiff asked for the recovery of $1,713.21 due it upon the original mortgage indebtedness, with interest, and for $144.34 alleged to have been advanced for insurance and taxes.

The plaintiff sets up that subsequently to the execution of the mortgage to it the defendants W. H. Foster and wife executed another mortgage on a part of the lands to P. E. Brown, and that the said P. E.

Brown subsequently conveyed, as mortgagee, to A. L. Osborne; that a portion of the lands embraced in the original mortgage was subsequently conveyed in a mortgage deed from Foster and wife to Coy Eller; and sets up numerous judgments that were taken against the defendant Foster having liens upon the lands both before and after the junior mortgages referred to, but all subsequent to the original mortgage to plaintiff.

Various defendants other than the Fosters answered the complaint, setting up their own claims and denying material allegations of the complaint. From these answers it appears that the answering parties were junior encumbrancers upon the land, and as between Coy Eller and P. E. Brown and his grantees their encumbrances were upon separate portions of the land. These answers are not material to the phase of the case which controls the Court in this opinion.

Mrs. Dorothy Foster answered as administratrix of W. H. Foster, who had died pending the proceeding or before it commenced. The record is not clear. In her answer she admitted the execution of the deed of trust, did not deny that the payments thereon were as stated in the complaint, but set up that under the contract with the Atlantic Joint Stock Land Bank her intestate, W. H. Foster, had been compelled to take out a policy of fire insurance upon the mortgaged premises payable to the plaintiff in the sum of $1,600.00, and by that contract had been compelled to surrender the said policy into the custody of the plaintiff. She alleges that while the policy was yet in force a dwelling house upon the premises of not less than $2,000.00 in value burned, and that it was the duty of the plaintiff to use diligence in the collection of the insurance for the loss thereby sustained, and that the plaintiff neglected to take any steps toward the collection of the said insurance and the application thereof to the indebtedness and, in fact, at the request of the insurance company, surrendered the insurance policy for cancellation. She alleges that by reason of the failure of the plaintiff to use due diligence in the collection of the said insurance, and its voluntary surrender of the policy for cancellation, plaintiff has become liable for the loss so sustained, and asks that the amount which should have been collected upon the insurance be credited upon the mortgage indebtedness before any foreclosure is permitted.

In an amended answer or cross action, joined in by Mrs. Foster, administratrix of W. H. Foster, and P. E. Brown, it is alleged that the plaintiff and the Farmers Mutual Fire Insurance Association, while the policy of fire insurance on defendant's property was still in force and after liability therefor had accrued, agreed together, for the purpose of defeating the defendant's rights, to cancel the policy of insurance, and the allegations as to damages, and the counterclaim, are reiterated.

LAND BANK *v.* FOSTER.

The plaintiff replied, admitting that the policy of fire insurance mentioned in defendant's pleading had been issued and that it contained a mortgage clause with loss payable to the plaintiff, as its interest might appear.

The evidence tended to show that the policy of insurance referred to was delivered to the plaintiff when it was taken out, and it is admitted that the buildings were burned on 14 April, 1931, and that the buildings were worth at least $1,000.00.

The evidence is conflicting as to whether the policy of insurance had been actually canceled. The testimony of H. F. Ledford is to the effect that the policy of insurance had been delivered up by the plaintiff for cancellation at the request of the insurance company in 1935.

T. R. Bryan, who succeeded the witness Ferguson as secretary-treasurer of the Farmers Mutual Fire Insurance Association, and who was at the time of trial in charge of the company, testified that he had investigated the records of the company and found no evidence of the cancellation of this policy.

The evidence tends to show that the Land Bank, after the date of the fire, independently procured other insurance upon the property, claiming as its authority to do so failure of the defendant Foster to keep the insurance up, according to the mortgage contract. The amount of the premiums of this insurance, with the taxes paid upon the property, constitute the claim represented by the second issue.

The evidence is silent as to occupation of the property at the date of the fire. However, it appears from the record that service of publication as to W. H. Foster and Mrs. Foster was ordered, and that subsequently Mrs. Foster was found to be in Greensboro, Guilford County.

The trial judge submitted two issues to the jury, one as to the amount which the plaintiff was entitled to recover upon the main indebtedness and one as to the amount which it was entitled to recover for money advanced by way of taxes and insurance premiums. He declined to submit any issue as to the insurance policy or as to the liability of the plaintiff thereupon. On the first issue he instructed the jury "that if you believe the evidence and find the facts to be as shown by the admissions and the documentary evidence introduced in this case that you will answer that first issue $1,713.21, with interest from July 1, 1933." On the second issue he instructed the jury "that if you believe the evidence and find the facts to be as shown by the witnesses, the testimony of the witnesses, the admissions, and the documentary evidence introduced, that you will answer the issue $144.34." The jury answered the issues accordingly and judgment ensued for the amount so found, and a foreclosure sale of the premises was ordered.

The judgment undertook to marshal the liens upon the property and order the sale of the lands described in the P. E. Brown mortgage deed first, and provided that if this did not bring enough to settle the debt, then the lands described in the mortgage deed to Coy Eller, or so much thereof as was necessary to pay the remainder of the judgment and costs of the action and sale, be sold. Defendants appealed.

*Folger & Folger and Arch T. Allen for plaintiff, appellee.*
*Whicker & Whicker and Jones & Brown for defendants, appellants.*

SEAWELL, J. The insurance policy, in the respects here considered, conforms to the requirements of the North Carolina act on the subject establishing a standard fire insurance policy. Michie's Code, section 6437. Where loss or damage is made payable in whole or in part to the mortgagee, it is provided: "Upon failure of the insured to render proof of loss, such mortgagee shall, as if named as insured hereunder, but within sixty days after such failure, render proof of loss and be subject to the provisions hereof as to appraisal and time of payment." As to the original insured, it is provided that "the insured shall within sixty days after the fire, unless such time is extended in writing by this company, render to this company a proof of loss, signed and sworn to by the insured," etc. But the rights of the parties after the policy has been issued must be ascertained and determined in accordance with the terms and provisions of the contract and derive no extra validity by reason of the fact that the form is prescribed by law. *Lancaster v. Ins. Co.,* 153 N. C., 285, 69 S. E., 214; *Midkiff v. Ins. Co.,* 197 N. C., 139, 141, 147 S. E., 812.

The assignment of an insurance policy is governed by rules pertaining to other assignments as to requisites, validity, operation, and effect. *Hobbs v. Memphis Ins. Co.,* 1 Smeed (Tenn.), 444; *Ward v. Rutland, etc., Mutual Fire Insurance Co.,* 31 Vt., 552. The theory that insurance is a personal contract and, therefore, limits the assignability, has no bearing here, since the insurance company consented to its transfer and recognized it by the attachment of the standard New York mortgage clause which, indeed, is in some aspects a contract between the insurance company and the mortgagee. No inference can be drawn from that theory that the proof of loss should preferentially be made by the owner, since the question of personnel is one which applies to the risk involved in issuing the policy. The effect of an assignment upon the insurance contract is, therefore, controlled by the terms and the circumstances of the contract of assignment itself; *Cleveland v. Clapp,* 5 Mass., 201; *Ainsworth v. Backus,* 5 Hun. (N. Y.), 414; and we think this holds true where the mortgage contract requires the policy to be taken out for the

benefit of the mortgagee and delivered up to him, although some question might be raised as to whether this would constitute a technical assignment.

The mortgage contract between the plaintiff and the defendants Foster required the latter to take out insurance upon the mortgaged property, the loss, if any, payable to the mortgagee, as its interest might appear, and further required that the insurance policy so obtained should be delivered into the possession of the plaintiff, which was done. Whether the defendants kept up the premiums on the policy, as they had agreed, or did not, does not appear in the record. It does appear, however, that some time in 1935 the mortgagee independently took out other insurance, although the dwelling had been destroyed by fire in 1931. This remarkable fact, bearing alike on the Land Bank and the insurance company which issued the policy on nonexistent property, seems to indicate an unjustifiable want of business prudence on the part of both parties to the transaction and the lack of easily obtainable knowledge of the conditions existing with respect to the property. The mortgagee meanwhile delivered up the policy of insurance taken out by Foster upon the mere request of the insurance company and a statement from them that it had been canceled, and without any investigation whatever.

In some respects the duty of the land bank toward the mortgagor with respect to the collection of the insurance on the loss which occurred by the burning of the property 12 April, 1931, is a matter of first impression with us. The precise point involved in this case does not appear to have been decided here.

That the mortgagee had the right to sue in the premises—especially since it had been accepted as payee by the insurance company—cannot be questioned. *Peterson v. Mechanics T. Ins. Co.*, 168 La., 850, 123 So., 596. And upon the evidence in this case it is clear that the amount of insurance was not sufficient to pay off the mortgaged debt, and the mortgagor, therefore, had no equity in the proceeds. It might well follow, since our statute requires suits to be brought by the party at interest—C. S., 446—that the plaintiff mortgagee alone could bring such a suit. 26 C. J., p. 484, and cases cited.

If any other sort of security had been lost by the negligence or misconduct of the plaintiff, it would have been liable therefor. The question here is whether or not the plaintiff, with the policy of insurance in its possession, with the right to sue, and virtually the owner of the proceeds to be recovered, did not owe the duty to the mortgagor to proceed to its collection and application.

We think the contract between the mortgagor and the mortgagee, considered as it affected their obligations and duties to each other, was a virtual assignment of the insurance contract. This, accompanied by delivery of the policy, in a measure substituted the mortgagee for the

mortgagor, certainly as beneficiary under the immediate contract, since it and it alone was entitled to receive the payment from the insurance company. It is not unreasonable to assume that it was the duty of the Land Bank to carry out that part of the contract which related to this interest, that is, the collection of the proceeds and the performance of those things which were necessary and incidental thereto. A reservation was made in the mortgage contract as to the duties to be performed with reference to the insurance contract by the mortgagor, the defendant Foster; that is to say, that he should pay the insurance premiums. We consider it the better reasoning, and so hold, that it was the duty of the Land Bank to exercise due diligence in collecting the insurance, and that this involves due diligence also in giving notice and making proof of claim, a duty which did not devolve entirely on the defendant mortgagor from the simple fact that the responsible officers of the Land Bank had never heard of the fire. It is quite possible, under the facts as we have above outlined them, that the defendant Foster also was in ignorance of the fire. The question is one of due diligence.

We consider the possession of the policy itself by the plaintiff as a strong circumstance in placing upon it the duty of proceeding with the collection. This was considered controlling in *Whiting v. Lane,* 193 Appellate Division, 964, 184 N. Y. S., 793; Annotations, A. L. R., 1289. See, also, *Charter Oak Life Ins. Co. v. Smith,* 43 Wis., 329, as to duty to collect.

There is the further circumstance, with which we do not think the court was competent to deal as a matter of law, that the plaintiff surrendered the policy of insurance for cancellation after (as the evidence tended to show) a liability for loss by fire had accrued upon it. The fire had happened some years before, it is true, and no proof of loss or demand had been made—a circumstance we have considered—but it was not for the plaintiff to determine what defense the insurance company might make against the claim, if any at all. Certainly the failure to file proof and make demand on the part of either the mortgagor or mortgagee would not, under all circumstances, defeat the claim, although it might determine the time within which suit might be brought; *Gerringer v. Ins. Co.,* 133 N. C., 407, 45 S. E., 773; and there are many circumstances which might excuse delay in filing proof of claim, and one of them, it has been held, is absence. 26 C. J., page 375; *Carpenter v. German American Ins. Co.,* 135 N. Y., 298, 31 N. E., 1015; *Oakland Home Ins. Co. v. Davis* (Texas Civil Appeals), 33 S. W., 587.

Indeed, where the New York standard mortgage clause is incorporated into the contract, containing the provision that no failure or misconduct on the part of the mortgagor shall defeat the rights of the mortgagee— and that clause is in this policy—it is generally held that the mortgagee

may bring suit without filing proof of claim at all.   At least under this contract of insurance there was nothing which the mortgagor could do to defeat the collection of this security on the part of the mortgagee, and little he' could do to advance it.   (As noted, the standard policy necessary under the North Carolina Insurance. Laws requires the affected mortgagee to make proof of claim within sixty days after a failure on the part of the original insured to do so.)

We are not considering any question of estoppel on the part of the intestate Foster, if there should be any estoppel involved in his conduct. That, at least, cannot be inferred as a matter of law from the evidence.

We think, and so hold, that the question of reasonable diligence in the collection of the item should have been left to the jury upon the issues submitted by the defendant, or other appropriate issues, with proper instruction by the court, and the failure to do so was error.

Under the circumstances of this case it was error also to instruct the jury that if they should believe the facts to be as testified by the witnesses, and as the admissions and documentary evidence tended to show, that they should find the second issue for the plaintiff.   Plaintiff had no right to charge defendant's intestate with premiums upon insurance voluntarily taken out upon nonexistent property, and no right to charge for insurance taken out upon any property without proof, which this evidence does not disclose, that said intestate had failed to pay premiums as required by the mortgage.

It is not necessary to review the judgment as to the order in which the property is required to be sold, since the defendant is entitled to have the amount due ascertained before such foreclosure takes place.

For the errors pointed out, there must be a

New trial.