HEDRICK v. RAILROAD.

(Filed November 22, 1904).

1. EVIDENCE—*Pleadings.*

In an action against a railroad company for the death of an em-
ployee, a part of the answer, admitting the killing of the intes-
tate, is competent, without the introduction of the remainder of
the paragraph which denies the negligence of the defendant.

2. RAILROADS—*Negligence—Bridges.*

Where an employee of a railroad company is killed by an overhead
bridge, in the discharge of his duty, the company is guilty of
negligence unless it had warning ropes so placed as to be a
sufficient warning to an ordinarily careful and prudent man in
the same position of the deceased.

3. NEGLIGENCE—*Damages—Railroad.*

Under the statute of Virginia the knowledge of an employee of an
overhead bridge does not defeat a recovery for his death caused
thereby, though it is his duty to exercise reasonable care.

ACTION by C. F. Hedrick against the Southern Railroad
Company, heard by *Judge O. H. Allen* and a jury, at Feb-
ruary Term, 1904, of the Superior Court of DAVIDSON
County. From a judgment for the plaintiff the defendant
appealed.

*Emery E. Raper,* for the plaintiff.
*Glenn, Manly & Hendren, Walser & Walser* and *F. H.
Busbee,* for the defendant.

MONTGOMERY, J. The plaintiff brought this action to re-
cover damages for the killing of his intestate through the
negligence of the defendant. In the complaint it is alleged
that the intestate, a brakeman on a freight train of the de-

fendant, while on a run between Spencer in North Carolina and Monroe in Virginia, was required to be upon the top of the freight cars, and while engaged in his work, at a point about two miles south of the city of Danville, Virginia, was struck on the head and face by the timbers of a bridge which the defendant negligently maintained across a cut on the road-bed and was so badly injured and hurt that he died a week thereafter. It was further alleged that the bridge was negligently constructed and maintained, because it was at such a low elevation as to render it dangerous and unsafe for its brakemen to discharge their duties at the point where the bridge crossed the track; that the night on which the intestate was injured was a very dark and rainy one and that the defendant had negligently failed to take proper precaution to warn their brakemen of approaching danger, when nearing the bridge, by placing lights or other sufficient precautions at the approach to the bridge. There was a further allegation in the complaint that, by the laws and statutes of the State of Virginia, it is provided that in case of the death of a person caused by the wrongful act, neglect or default of another, the administrator of such person shall have a right of action therefor against the person or corporation whose wrongful act, neglect or default caused such death. And it was further alleged that by act of the General Assembly of Virginia knowledge of any employee injured by defective ways, appliances and construction of such corporation shall not of itself be a bar to the recovery of damages for the injury and death caused thereby, and that the personal representative of such employee shall have a right of action therefor. The defendant in its answer denied that it had been negligent, and set up as a further defense the plea of contributory negligence on the part of the intestate.

There was evidence on the trial tending to show that the intestate was killed by being struck by the timbers of the

bridge and that the bridge was not high enough so a man standing on a box-car could be carried under it in safety; that if a man was standing on an ordinary box-car the bridge would strike him on the breast; or if on the highest car, on the stomach; or on the lowest car, on the head. It was further in evidence that there were warning ropes suspended above the track on each approach to the bridge and twenty-five or thirty yards off, called "tell-tales." Those ropes were intended to notify brakemen to stoop, and they were suspended at such a distance as to strike the heads of the brakemen as they passed. One witness, who had been in the employment of the defendant, said that those warning ropes could not be trusted as they sometimes got tangled and "kicked up." The plaintiff in the course of the trial offered in evidence a part of paragraph 1 of the answer, viz., "that while the plaintiff was acting as flagman of defendant company he was killed, and defendant is informed and believes by reason of his head coming in contact with an overhead bridge at some point south of the city of Danville, Virginia." The defendant objected because the part introduced was only a part of a sentence and the entire sentence was not offered. The remainder of the sentence, after a comma, was "but defendant alleges that the bridges was properly constructed across the track, and that before reaching said bridge on either side, for the purpose of warning the employees of it, on the trains approaching the bridge, there is constructed what is known as "tell-tales" or ropes properly adjusted." * * *

The evidence was received as it was offered, and we think properly. It is true that the part of the paragraph offered in evidence was only the half of the paragraph and a half of the sentence, but it was a complete admission that the intestate had been killed and that his death was caused by contact with the bridge. That part of the sentence not

offered in evidence did not in the least retract that admission. It only had reference to whether he was killed through the negligence of the defendant. It was not averred in the latter part of the sentence that the intestate was not killed by being stricken on the head by the timbers of the bridge, but it contained a matter of defense on the part of the defendant against its alleged negligence. The case of *Lewis v. Railroad,* 132 N. C., 382, is in point.

The same point of evidence was raised in *Stewart v. Railroad,* at this term, 136 N. C., 385. In that case the plaintiff offered in evidence a part of the first paragraph of the defendant's answer, viz.: "That the plaintiff's intestate was struck by the engine pulling train 34 at the time alleged; that no one saw him struck or ever heard him say anything about how he was struck, but the defendant alleges that the said deceased, J. R. Reaves, was upon the track, and that the engineer of train 34 did not see him until he saw him fall." That part of the sentence was objected to by the defendant because the whole paragraph was not offered. The omitted part of the paragraph was separated from the other by a colon, and was in these words: "That the engineer and firemen were keeping a lookout and in noway upon said occasion was the defendant negligent in its conduct against the said deceased." * * * The objection was sustained in the lower Court and the evidence offered excluded, but this Court held that that was error, and said: "It was competent to show the killing of the intestate by the defendant and also to show its negligence. It was an admission complete in itself, and that plaintiff was not compelled to put in matter of explanation or exculpation on the part of the defendant. The defendant would have that privilege itself. 1 Greenleaf Ev. (16 Ed.), sec. 201." In that case the sentence was connected by a colon; in this, by a comma. Marks of punctuation are useful in the construction of sentences and

136——33

to give each part its force and meaning; but in the plead-
ings in a law-suit the difference ·between a colon and a
comma will make no difference where the parts of a sentence
show that there is a matter in one clause full and complete
in itself, establishing an affirmative fact, and which is not
denied in the other clause, but only its consequences at-
tempted to be explained or avoided.   But if the evidence
offered had not been competent, it would have been in real
fact harmless in this case, for there was an abundance of
evidence going to show that the intestate was killed by a
blow on the head through contact with the bridge timbers;
and his Honor told the jury, when he reviewed the evidence
and also in his instruction to them, that they should not con-
sider it as evidence of negligence on the part of the defend-
ant, but only as evidence that the intestate was killed by the
bridge.

The exception was made by the defendant to that part
of his Honor's charge to the jury, in substance, that if the
defendant allowed an overhead bridge to remain across its
track so low that the intestate, while standing on top of a
car in the place of his duty, was stricken by the timbers of
the bridge and killed, the first issue (on the defendant's
negligence) should be answered "Yes," unless it should be
found that the defendant had warning ropes before the ap-
proach to the bridge "so arranged and at a sufficient distance
as to be sufficient protection to warn an ordinarily careful
and prudent man in the position of the deceased under the
same conditions and circumstances, and if the jury find that
the defendant had such 'tell-tales' or warning ropes, they
should answer on the first issue 'No.' "

The defendant contends that the latter branch of the
instruction was not pertinent to the facts, and that the first
clause was erroneous.  The argument was that the only evi-
dence offered was that the "tell-tales" or ropes were twenty-

five or thirty yards on either side of the bridge and were for the purpose of notifying brakemen of the approach to the bridge, and that the law presumed that the "tell-tales" were arranged as such warnings are usually arranged, and that there was no evidence that they were not so arranged and not at a safe and proper distance. It does not need any citation of authority for the position that under the law the master is compelled to provide a reasonably safe place in which his employee is to do his work, and that the failure to perform this duty is negligence. In this case the defendant permitted its bridge to be over its railroad not of sufficient height above the track so that a brakeman standing on top of its cars could pass thereunder in safety. The night on which he was hurt was dark and rainy. Surely this was evidence of negligence, unless the nature of the surroundings made it impossible for the defendant company to have erected a higher bridge, and in that event such warnings and signals as might operate to prevent injury should have been adopted and put in use. 4 Am. & Eng. Ency. (2 Ed.), 936; Bailey's Master's Liability for Injury to Servant, p. 41. If it were the fact—which was not proved—that the defendant company could not have built a higher bridge, did they adopt such warnings and signals as would operate to prevent injury to its brakemen? If they intended the "tell-tale" ropes for that purpose, who are the better judges of the sufficiency and the reasonableness of those precautions than the jury? Was it not for them, upon the evidence, to say whether dangling ropes twenty-five or thirty yards from the approach to the bridge were of proper distance to give warning? Was it not for them to say whether they were sufficient notice to brakemen, considering the evidence of one of the witnesses who said that they sometimes got tangled and would "kick up?" Was it not for them to say whether or not "tell-tale" ropes were long enough to strike a brake-

man if he should be in a stooping position at his work? We see no error in that instruction.

The plaintiff requested the Court to instruct the jury that if they found from the evidence that the defendant allowed a low bridge to remain across its track so that a brakeman on top of the cars could not while standing thereon pass under the bridge in safety, mere knowledge of the existence of the bridge so constructed, if the intestate had such knowledge, would not make him guilty of contributory negligence, and the jury should answer the second issue (as to contributory negligence) "No." The Court gave that instruction, except that part of it in these words, "that they should answer the second issue "No," and added that "it was the duty of the plaintiff's intestate to exercise ordinary care with reference to the danger, the surroundings, the situation, and in considering whether he contributed to his injury the jury can consider the fact that he had been running on this road for three or four months, and as to whether he knew the situation and condition of the bridge, its structure and height. It was his duty to exercise reasonable care with reference to the situation, the more danger the more careful he should be."

We see no error in the instruction as given. The statute on this subject of the State of Virginia, set out in the complaint, contains this provision: "Knowledge of any employee of the defective or unsafe character or condition of any machinery, ways, appliances or structures of such corporation, shall not of itself be a bar to recovery for any injury or death caused thereby." So that prayer was framed in accordance with the law of the State of Virginia, where the intestate was killed, and the addition to the instruction asked by the plaintiff was almost in the language of the defendant's third prayer for instruction, and we think, in all and its every part, that it fairly and properly presented that

phase of the case to the jury. . His Honor gave the defendant's third prayer for instructions to the jury and declined the other three.

We need not discuss them because they are embraced in our consideration of the plaintiff's prayers.

The exceptions of the defendant to the evidence are without merit.

Affirmed.