THAXTON v. INSURANCE COMPANY.

(Filed November 13, 1906).

*Insurance—Evidence—Prima Facie Case—Proofs of Death —Waiver—"Death by Own Act"—Suicide—Burden of Proof.*

1. In an action to recover the amount of an insurance policy, where the plaintiff introduced the policy insuring the life of the deceased for plaintiff's benefit, proved the payment of premiums which kept the policy alive, till June 18, 1905, and introduced a clause of the defendant's answer admitting that deceased died on April 25, 1905, this testimony makes out a *prima facie* case for plaintiff.

143—3

2. Where proofs of death of the insured have been formally made, and the insurance company retains them without suggesting any defect or failure to comply with the requirements of the policy, and finally refuses to pay the claim, it thereby waives any defect in the formal proofs of death and acknowledges that the requisite proofs were received by it.

3. A provision in an insurance policy that if the insured, within one year from the issue of the policy, die by his own act or hand, whether sane or insane, the company shall not be liable for any greater sum than the premiums, etc., is valid, and refers to suicide, and does not include a killing by accident.

4. On an issue addressed to the question whether the insured committed suicide, the presumption is against an act of suicide, and the burden is on the party who seeks to establish it.

5. Where the testimony disclosed that the insured was "found dead with a gunshot wound in his left side," with the additional and only explanatory statement, "Everything pointed to an accident in handling the gun, which was supposed to be empty," the Court was correct in charging the jury that if the testimony was believed, they should find that death was not suicidal.

WALKER, J., dissenting.

ACTION by Mollie F. Thaxton against the Metropolitan Life Insurance Company, heard by *Judge M. H. Justice* and a jury, at the June (Special) Term, 1906, of the Superior Court of ROWAN. This was an action to recover the amount of an insurance policy.

Issues were submitted and responded to by the jury as follows:

1. Has plaintiff complied with all the conditions of the contract of insurance set out in the complaint, which by the terms of the contract were to be performed by her as a condition precedent to her recovery on this contract? Answer: "Yes."

2. Did the insured, Beverly Wiley Thaxton, die by his own hand or act, with intent to commit suicide? Answer: "No."

3. Is the defendant indebted to the plaintiff; if so, in what sum? Answer: "$2,000."

Judgment on the verdict for the plaintiff, and defendant excepted and appealed.

*R. Lee Wright* and *P. S. Carlton* for the plaintiff.
*Burwell & Cansler* and *L. H. Clement* for the defendant.

HOKE, J.   At the close of the testimony the Court instructed the jury that if they believed the evidence, they would answer the first issue "Yes"; the second issue "No," and the third issue "$2,000," the amount stipulated in the policy.

The defendant objected to this charge of the Court, and the brief for defendant filed in the cause stated that all other exceptions are abandoned.

We are of opinion that the objection to the charge cannot be sustained.

On the trial, the plaintiff introduced the policy insuring the life of the deceased for plaintiff's benefit for the sum of $2,000, proved the payment of premiums, which, by the terms of the policy kept same alive, till June 18, 1905; and then introduced a clause of the defendant's answer which admitted that deceased died on the 25th of April, 1905.

According to the authorities, this testimony makes out a *prima facie* case for plaintiff, and nothing else appearing, would justify the charge of the Court as given. *Spruill v. Ins. Co.,* 120 N. C., pp. 141-150; *James v. Ins. Co.,* at the present term.

Defendant's first objection rests upon the allegation that no satisfactory proof of the death of the insured has been made; that the requirements of the policy as to the form and *quantum* of proof have not been fully complied with.

We fail to discover any essential defect in the matter referred to; but if such defect existed, we do not think the objection is now open to defendant.

So far as the *quantum* of proof is concerned, it is admitted in the answer that the insured is now dead, and was at the beginning of the suit.

And as to the form, to which this objection is chiefly urged, it is well established that where proofs of death have been formally made and the company retains them without suggesting any defect or failure in this respect to comply with the requirements of the policy, and finally refuses to pay the claim, it thereby waives any defect in the formal proofs of death and acknowledges that the requisite proofs were received by it. Niblack Benefit Societies and Accident Insurance, vol. II, sec. 326, and authorities cited.

Here, proof of death was made on blanks supplied by the company in July, 1905. So far as the testimony shows, no objection or suggestion of any defect was made as to the proof until answer filed November following, denying liability on the policy; and then in such general terms that plaintiff could hardly discover what change or correction was desired. Under such circumstances, the objection as to the form of proof is properly held to be waived.

Again, the charge of the Court is urged for error in connection with the second issue, the issue being in form as follows:

"Did the insured die by his own act or hand with intent to commit suicide?"

The policy, bearing date June 18, 1904, contains a condition that if the insured, within one year from the issue of the policy, die by his own act or hand, whether sane or insane, the company shall not be liable for any greater sum than the premiums, etc. A condition of this kind is held to be a valid stipulation. *Spruill v. Ins. Co.,* 120 N. C., p. 140; Vance on Insurance, p. 532.

And it is generally held also that such a provision, in its terms, refers to suicide and does not include a killing by accident, even although the act of the insured may have been the unintended means of causing death. Vance on Insurance, *supra.*

The issue was therefore properly framed: "Did he die by his own hand with intent to commit suicide?"

It is also accepted doctrine that on such an issue addressed to this question, the presumption is against an act of suicide, and the burden is on the party who seeks to establish it. Am. and Eng. Ency., vol. I, p. 331; Vance on Insurance, p. 523; Lawson's Law of Presumptive Evidence, p. 241; *Spruill v. Ins. Co., supra; Mallory v. Ins. Co.,* 47 N. Y., p. 52.

In Lawson on Presumptive Evidence, *supra,* the case is thus put: "H. is found dead. An examination reveals that his death was caused by taking arsenic. His life is insured, and the question arises whether his death was caused by suicide or accident. The presumption is that it was caused by the latter."

This being the presumption, and defendants having offered no evidence, the question arises whether, on the testimony introduced by the plaintiff, there is, in law, sufficient evidence for the consideration of a jury tending to rebut the presumption. The testimony we find in the record pertinent to this question will be found in the statement of plaintiff and of the coroner, on file pursuant to a requirement of the policy, as a part of the proof of death. That of plaintiff is as follows:

"Give cause of death (full particulars). Ans.: Was caused by gunshot wound in left side. Everything pointed to an accident in handling the gun, which was supposed to have been empty."

That of the coroner:

"Was death the result of the deceased's own hand or act? Ans.: Yes; or by some unknown hand, accidentally or otherwise."

The statement of the coroner is colorless and without probative force of any kind. It amounts, in fact, to his saying

what the physicians had said in answer to the same question:
"They didn't know."

The testimony then discloses that the deceased was found
dead with a gunshot wound in his left side. There is no tes-
timony as to the temperament, condition, or domestic, social,
or business life of the deceased which would tend to indicate
suicide, or as to any declaration, written or oral, of like ten-
dency. There is nothing offered as to the position of the
body, the placing of the gun, or the character and course of
the wound which would support such a theory.

The testimony before us leaves the matter as stated, with
the objective fact, "Found dead with a gunshot wound in his
left side," with the additional and only explanatory state-
ment of the applicant, "Everything pointed to an accident in
handling the gun, which was supposed to be empty," and this
supports the presumption raised by the law that the killing
under such circumstances is presumed not to be with suicidal
intent.

We think it clear, therefore, that his Honor was correct
in charging the jury that if the testimony was believed, they
should find according to this presumption and answer the
second issue "No."

There is nothing in *Spruill's case, supra,* pp. 150-151, re-
lied on by defendant, which militates in any way against our
present decision. In that case the plaintiff had stated, in his
proof of loss, that the insured "had died by his own hand";
and the Judge writing the opinion had held that this state-
ment, standing unexplained, was an admission of suicide,
and at once shifted the burden of proof. The decision pro-
ceeded upon the idea that by fair intendment, and by uniform
construction of the courts, these words, unexplained, amounted
to an allegation or admission of suicide; and the opinion,
on this point, says: "The plaintiff, though she went on the
stand herself, in nowise contradicted the import of these
words; nor did she testify to any facts tending to show she

had used them by mistake or inadvertence. Her admission, unexplained and uncontradicted, justifying his Honor's direction to the jury."

But there is no such admission in the proof offered here. Even if the statement of the applicant permits the interpretation that the deceased had hold of the gun when the death wound was inflicted; not only is there no admission of suicide, but such an inference is repelled by positive averment. "Everything pointed to an accident in handling a gun supposed to be empty."

There is no error in the charge of the Court, and the judgment is affirmed.

No Error.

WALKER, J., dissenting: It may be conceded that where nothing else appears but the fact that the death of the insured was caused by his own act, the law will presume it to have been accidental rather than suicidal, for it will not generally presume a wrong; and it may also be conceded that under the terms of the contract the death must have been caused by the voluntary and intentional act of the insured in order to avoid the policy. But with these concessions made, it seems to me that there is sufficient evidence here of deliberate self-destruction to carry the case to the jury. The provision against liability in the event of suicide is not only a valid one, but a policy which insures against such a risk as suicide has been held to be void as being against public policy. *Ritter v. Ins. Co.*, 169 U. S., 139. Such a clause of exemption from liability should therefore be favorably considered, as it is in harmony with the policy of the law.

No one can read the testimony of the beneficiary without being impressed with the belief that in her answer to the question as to the cause of death she intended to convey the meaning that the insured died of a gunshot wound in his left side which was inflicted by himself. If there was any

doubt as to what she did mean, it was for the jury and not for the Court to resolve that doubt. The legal effect of this testimony was to bring the case within the operation of the principle laid down in *Spruill v. Ins. Co.,* 120 N. C., 141, for when she admitted substantially that he died of a self-inflicted gunshot wound, it was equivalent to saying that he died by his own hand, which in that case was said to be sufficient to establish a case of suicide. It is true, she added that "everything pointed to accident in handling the gun, which was supposed to have been empty," but is the defendant to be concluded by such a statement? In the first place, it is evident that she is merely expressing an opinion, and not stating positively a fact within her knowledge. It is merely her inference from supposed attending circumstances which she deemed sufficient to justify her conclusion. But is it evidence? Is it not condemned by the elementary rules governing the admission of testimony? The law deals with facts and not opinions or conclusions of witnesses, except in certain cases, of which this certainly is not one.

Again, we turn to the coroner's testimony, and find that to the question, "Was death the result of the deceased's own hand or not?" he gives this answer: "Yes; or by some unknown hand—accidentally or otherwise." Here again we have precisely the answer that was given in the *Spruill case;* and there is added, as was done by the beneficiary when replying to a similar question, what is nothing more nor less than rank conjecture. He first says, "Yes," that is, "he did die by his own hand or act," and then proceeds to express his opinion in regard to something he evidently knew nothing about. The very terms of his further answer to the question, after he had said positively that he had died by his own hand or act, shows clearly that he did not intend to speak of his own knowledge, but was only making a guess as to what other circumstances may have caused his death.

The insured died in April, and the proofs were not filed with the company until the following August. Why this delay? But if this fact be not at all significant, why was not an investigation made in the meantime to ascertain if he had been shot by any one else? There is no suggestion that any one has even been suspected of having shot him. That he killed himself is the only fair and reasonable inference to be drawn from this evidence. It may be added that those who are supposed to know all the facts and circumstances in regard to the manner of the killing have vouchsafed no definite explanation of it, but have considered their duty performed by giving us a mere surmise, which we are just as capable of making as they. We are not told what was the position of the gun with reference to the body when it was found; what the habits of the deceased, nor are any of the attendant circumstances given, although some of them must have been known.

I do not think it was incumbent on the defendant to show that which was peculiarly within the knowledge of the other side, or of which they at least had the better opportunity of acquiring knowledge; and especially is this true when the coroner had admitted, and the plaintiff virtually so, that the insured died by his own hand, thereby casting upon the plaintiff the burden of explaining the occurrence.

It is also to be noted that the coroner testified that he held no inquest, and made no *post-mortem* examination, because no foul play was alleged. What did he mean by this statement? Simply that he died by his own hand and not by the hand of any one else; that a suicide and not a felonious homicide had been committed. These were all matters for the jury.

It is further to be said that the policy provides expressly that "the proofs shall be evidence of the facts therein stated in behalf of, but not against, the company." That which makes for the company shall be considered, but not that which may tend to make for the beneficiary. The sufficiency of the evi-

dence for the purpose of being submitted to the jury and considered by them is to be determined in the light of this stipulation, which is reasonable and valid, and should therefore be enforced. *Ins. Co. v. Dick,* 44 L. R. A., 846, and notes. And surely this must be so when all the evidence was introduced by the plaintiff. If these matters are considered, it sufficiently appears, *prima facie* at least, that the insured died by his own hand (*Bigelow v. Ins. Co.,* 93 U. S., 284), and the other statements in the proofs are merely some evidence, if evidence at all, to qualify or contradict this admission; but at last it is for the jury to weigh and decide upon. *Ins. Co. v. Higginbotham,* 95 U. S., 380; *Ins. Co. v. Dick, supra; Johns v. Relief Association,* 90 Wis., 332; May on Insurance, sec. 325. If the opinion or conjecture of the plaintiff stated in the proofs was competent at all, it certainly should be considered by the jury, and not held as matter of law to absolutely overcome and destroy the other statement. They would not, perhaps, attach as much weight to a mere expression of opinion as they would to the positive statement of a fact within her knowledge. It was evidence, therefore, for the jury, and not such as warranted the Court in rejecting altogether the other part of the answers and virtually directing a verdict.

It is to be noted that the plaintiff did not go on the stand, nor did she offer the other witnesses who joined her in the proofs. This is significant and was a proper subject of comment in discussing the evidence before the jury, and was a circumstance proper for their consideration. *Goodman v. Sapp,* 102 N. C., 477; *Yarborough v. Hughes,* 139 N. C., 199.

The right of trial by jury is one that should be jealously guarded and accorded to the citizen in all cases, where there are any disputed matters of fact which raise issues between the parties. It is one of the fundamental guaranties of our system of government, and should never be denied to any

litigant in whose favor a reasonable inference of fact may be drawn from the evidence. *Spruill v. Ins. Co., supra.* Unless it is perfectly clear and manifest that there is no such evidence, to take from him the privilege of having the evidence weighed by the only tribunal appointed for that purpose, and the best ever devised by the wit of man, is a plain invasion of his constitutional right. With all possible deference for my brethren, from whom I always regret to differ, I must think that there is evidence in this case which entitles the defendant to be heard by a jury and to have their judgment upon the facts. The majority, it seems to me, have attached too much importance to incompetent, irrelevant and inconclusive statements in the proofs, and have failed to shift the burden of proof from the defendant to the plaintiff upon the admissions in the "proofs of death" (*Insurance Co. v. Newton,* 22 Wallace, 32), or to give proper heed to the provision of the policy as to the effect those "proofs" shall have as between the parties to an action on the contract of insurance. When his Honor instructed the jury as he did, in my opinion he committed an error.