J. A. MODLIN v. ATLANTIC FIRE INSURANCE COMPANY.

(Filed 22 September, 1909.)

1. **Appeal and Error—Forma Pauperis—Trial Judge—Discretion.**

    An appeal will not lie from the decision of the trial court in refusing a motion to disallow the continued prosecution of a suit in *forma pauperis*, it being within his discretion.

2. **Insurance—Pleadings—Evidence—Admissions.**

    When, in an action against a fire insurance company, the complaint alleged a total loss and that the full amount of insurance became due, a part of the corresponding allegation in the answer is admissible in evidence, when put in by plaintiff, admitting the loss, without introducing a part thereof denying liability therefor.

3. **Insurance — Title — Deeds — Trusts and Trustees — Beneficial Owner—Evidence.**

    A deed from the insured to the property embraced in a policy of fire insurance, the subject of the suit, having been put in evidence by the defendant insurance company as a matter of defense to show that the insured had concealed a material matter concerning his title to the subject of the insurance, it was competent for the insured to show that the grantee agreed to take title and hold it solely in trust for the benefit of the insured, and thus explain the quantity and quality of his title and estate in the property.

4. **Parol Trusts—Sole Beneficial Interests—Equitable Owner.**

    One who is entitled, under a parol trust, to the entire beneficial interest, is the sole equitable owner of the property affected by the trust.

5. **Insurance—Title—Equity—Proof.**

    As between the insured and an insurance company, in an action to recover upon a fire insurance policy, it is not necessary for the former to show by clear, strong and convincing proof, that he was the sole equitable owner of the property covered by the policy, this rule of proof not applying in such case.

6. **Insurance—Title—Essential Matters—Time of Inquiry.**

    If it is essential for an underwriter to know by what title the insurer holds the property, the inquiry should be made at the time of issuing the policy, and not deferred until after the loss has occurred.

7. **Insurance — Mortgages — Title — Policy — Benefits Avoided — Waiver—Estoppel.**

    Execution of a mortgage on the insured property so affects title, as will avoid an insurance policy then existing thereon and forfeit its benefit, if made without the knowledge or consent of the insurance company, and not attested as prescribed by the policy contract, unless the company thereafter, by its acts, conduct and statements has waived the effect of the mortgage and is estopped to assert its forfeiture.

8. **Same—Evidence.**

In an action to recover upon a fire insurance policy, in defense to which a mortgage of the property insured was put in evidence as tending to show a misrepresentation by plaintiff of his title thereto, it is competent for the plaintiff to show, upon the question of defendant's waiver and estoppel, that the adjuster found the property was mortgaged contrary to the insurance contract, but assured plaintiff that defendant company would nevertheless pay the loss; that the defendant, thereafter, notified plaintiff it was sending draft for payment to its local agent, also notifying mortgagee thereof, and that subsequently defendant withdrew payment of draft upon objection of mortgagee to payment of premiums due to local agents of defendant, assented to by plaintiff.

9. **Insurance—Policies—Conditions—Waiver.**

It is not necessary that the consent of an insurance company to a waiver of the conditions of a policy contract be in writing and attached to the policy, as therein required, when such consent was given by the company itself. *Black v. Insurance Co.*, 148 N. C., 169, cited and distinguished.

10. **Same—Arbitration—Non-waiver—Agreement—Estoppel.**

A "non-waiver agreement" looking to the ascertainment of loss by fire under a fire insurance contract, affords no defense to the insurance company for its own acts, conduct and statements, constituting a waiver or estoppel done and made afterwards with full knowledge of all its rights and defenses and a knowledge of the causes of avoidance.

11. **Insurance—Standard Policies—Limitations of Actions—Interpretation of Statutes.**

The provision of a standard fire insurance policy, Revisal, sec. 4760, stating that no suit thereon shall be sustained, etc., "unless commenced within twelve months next after the fire," etc., must be construed in connection with Revisal, sec. 2809, to-wit: that the policy shall not "limit the time within which such suit or action shall be commenced to less than one year after the cause of action accrued," and it is not barred if brought accordingly.

12. **Insurance—Pleadings—Waiver—Estoppel—Allegations Sufficient.**

In an action to recover upon a fire insurance policy, the plaintiff alleged sole beneficial ownership of property insured, the issuance of policy and subsequent loss by fire when policy was in force; the adjustment of loss which defendant promised to pay and issued check therefor, but recalled it. The parties appeared to be satisfied to present their contentions arising under the pleadings under an issue of indebtedness, and another as to the bar of the statute of limitations. *Held*, matters constituting waiver and estoppel were sufficiently pleaded in this case.

APPEAL from *Guion, J.,* Spring Term, 1909, of BERTIE.

From a judgment for plaintiff defendant appealed.

The plaintiff alleged that he was the sole beneficial owner of the property insured; that defendant, on 5 July, 1906, issued its

policy of insurance for $500; that the property was destroyed by fire 24 May, 1907, the policy being in force; that proof of loss was made, the loss adjusted and defendant promised to pay full amount of policy and issued its check therefor, but the same was recalled before delivery to plaintiff; that the policy had not been assigned, but was held simply as collateral security. The defendant denied plaintiff's ownership of the property insured; alleged that the title was in one Wilmer Modlin; admitted it issued the policy of insurance, using the standard form prescribed in section 4760, Revisal; admitted destruction of property, but denied liability; alleged the execution of the following nonwaiver agreement by plaintiff and defendant:

"NONWAIVER AGREEMENT.
"29 May, 1907.

"It is hereby mutually stipulated and agreed by and between J. A. Modlin, party of the first part, and the insurance company or companies whose name or names are signed hereto, each acting for itself, party of the second part, that any action taken, request made or information received by said party of the second part in or while investigating or ascertaining the cause of fire, the amount of loss or damage, or other matter relative to the claims of said party of the first part for property alleged to have been lost or damaged by fire on 24 May, 1907, shall not in any respect or particular change, determine, waive, invalidate or forfeit any of the terms, conditions or requirements of the policy of insurance of the second part held by the party of the first part or any of the rights whatever of any party hereto.

"The intent of this agreement is to save and preserve all the rights of all the parties hereto and permit an investigation of the claim and the determination of the amount of the loss or damage, in order that the party of the first part may not be unnecessarily delayed in his business, and that the amount of his claim may be ascertained and determined without regard to the liability of the party of the second part, and without prejudice to any rights or defenses which said party of the second part may have.                    ATLANTIC FIRE INSURANCE Co.,
"J. A. MODLIN.                    By W. B. SWINDELL."

Alleged that the policy was avoided (1) because the assured swore falsely, in that he swore in the proof of loss that the property described in the policy belonged at the time of the fire to insured, and no other person or persons had any interest therein, thereby violating an express provision of the policy; (2) that the plaintiff was not the sole and unconditional owner

of the property insured; (3) that the plaintiff violated the following stipulation in the policy: "If any change, other than by the death of the insured, take place in the interest, title or possession of the subject of insurance (except change of occupants without increase of hazard), whether by legal process or judgment, or by voluntary act of insured, or otherwise," the policy shall be void, in that two mortgages were placed on the property, one before and the other after the policy was issued, and both without the knowledge of the defendant; (4) that this action was not brought within the time specified in the policy contract, to-wit, one year.

The evidence established the following facts: (1) That the plaintiff was the sole beneficial owner of the property, the naked legal title being in Wilmer Modlin. (2) That two mortgages were placed on the property, one before and the other after the policy was issued. (3) That the defendant had no knowledge of either until after the fire, the existence of the mortgage being discovered by defendant's adjuster during the investigation of the causes of the fire and the adjustment of the loss. (4) That the mortgages were unpaid at the time of the fire. (5) That proof of loss was filed on 5 June, 1907, and that on 6 June defendant sent draft to its agents at Tarboro, who placed the insurance for the amount of adjustment and so notified plaintiff and the holder of the first mortgage and the assignee of the policy of insurance; that the draft was recalled before delivery, and the plaintiff and his assignee so notified, and the plaintiff informed that the matter of payment of loss was postponed until a meeting of directors of defendant, on 15 July, 1907. No further correspondence passed between plaintiff and defendant after 25 June, 1907. (6) Summons was issued 22 June, 1908.

His Honor submitted the following issues, which, under his direction, were answered in favor of the plaintiff, to-wit:

"Is the defendant indebted to plaintiff, as alleged in the complaint?

"Is the action of plaintiff barred?"

The defendant in apt time moved both to dismiss the action and for judgment of nonsuit; also requested his Honor, by specific prayers, to instruct the jury that the plaintiff could not recover, and to answer each issue in its favor. It was agreed that if plaintiff was entitled to recover, the amount was $495, less $45.40, premiums unpaid on the policy. At the end of the case on appeal his Honor makes this statement: "The case was tried by the court upon the theory that after the loss by fire and after the adjustment of such loss the agent and adjuster, with

admitted knowledge of the mortgages upon the property, thereafter sent check in payment."

*Pruden & Pruden, Shepherd & Shepherd, T. H. Calvert* and *Gilliam & Davenport* for plaintiff.

*Winston & Matthews, Murray Allen* and *Womack & Pace* for defendant.

MANNING, J. The defendant, during the trial, took several exceptions, which we will dispose of before considering the principal questions presented by the record. The defendant moved to strike out the order allowing the plaintiff to sue *in forma pauperis* and to require a prosecution bond or deposit. The motion was heard by his Honor upon affidavits, and he disallowed it. This exception cannot be sustained under the decision of this Court in *Christian v. Railroad*, 136 N. C., 321. The defendant's second exception was to the ruling of his Honor in permitting plaintiff to offer in evidence a part of paragraph 4 of the answer and the corresponding paragraph of the complaint. The part of paragraph 4 of the answer offered by plaintiff was as follows: "As to the allegations contained in article 4, defendant admits the loss of the said property by fire." The excluded portion was: "but denies liability therefor." Article 4 of the complaint alleged a total loss by fire and that the full amount of insurance became due. The third exception is of the same character. These exceptions cannot be sustained. *Lewis v. Railroad*, 132 N. C., 382; *Hedrick v. Railroad*, 136 N. C., 510; *Stewart v. Railroad*, 136 N. C., 385; *Thaxton v. Insurance Co.*, 143 N. C., 33; *Hochfield v. Railroad*, 150 N. C., 419.

Defendant's fifth exception is thus stated in the record: "The following question is asked J. A. Modlin, plaintiff: 'You have heard the deed read from manufacturing company to Wilmer Modlin. For whose benefit was that deed made?' To this defendant objects. The purpose of this question is to establish a trust in the hands of Wilmer Modlin for the use of the plaintiff, for the purpose of showing a beneficial interest in plaintiff at the time of the contract of insurance and for the purpose of showing that he had the sole beneficial interest, and to show that Wilmer Modlin agreed to take the legal title to himself and to hold it solely in trust for the benefit of J. A. Modlin and to convey it to such person as he might direct at any time. Defendant objected; overruled, and witness answered as above. Defendant excepted."

The defendant had, prior to this question and answer, offered in evidence a deed from the manufacturing company to Wilmer

MODLIN *v.* INSURANCE COMPANY.

Modlin covering the property insured, for the purpose of proving a breach of the conditions of the policy that plaintiff was not the sole and unconditional owner of the property insured, in that the plaintiff had concealed a material fact concerning the subject of insurance; in that the interest of the insured in the property was not truly stated in the policy, and in that plaintiff falsely swore, after the loss, touching his title to the property. In this situation it was competent for the plaintiff to show the quantity and quality of his title and estate. There was no application filed for this policy. The plaintiff testified there was nothing said or inquiry made about the character of his title to the property. "An equitable owner is an entire and sole owner." 13 Am. & Eng. Enc., n. 6, p. 231, and cases cited; Ostrander on Fire Ins., sec. 63, p. 217; *Wainer v. Ins. Co.,* 153 Mass., 335; *Ins. Co. v. Crockett,* 7 Lea (Tenn.), 725. In *Ins. Co. v. Erb,* 112 Pa. St., 149, the facts were these: "The property insured was a tannery, situated at Port Matilda, in Center County. The title, it is conceded, had been in one Dr. Myer, from whom, on 25 April, 1882, it was sold by the sheriff and purchased by John G. Love. Before the sheriff's return of the sale Love agreed to sell the property to John Erb, the plaintiff below, but by some blunder the sheriff returned the property as sold to Elizabeth J. Erb instead of John Erb, and made the deed to her." There was evidence supporting this statement, and the Court held: "If the facts alleged are assumed, John Erb was, in equity, the absolute and sole owner of the property. He held in trust for no one, but in his own right, and was entitled at any time to a conveyance. The title of his mother was the bare legal title, and was to her utterly and absolutely worthless. It was not essential that John Erb should have been invested with the legal title if he was the sole beneficial owner of the property." It cannot be questioned in this State that one who is entitled, under a parol trust, to the entire beneficial interest is the sole and absolute owner of the property affected by the trust. That the evidence required to establish this beneficial ownership does not, in an action between the party asserting such ownership and an insurance company, fall within the rule requiring clear, strong and convincing proof, is held, in *Ins. Co. v. Jackson,* 105 Ill. App., 287; that the holder of such beneficial interest has an insurable interest is likewise well settled. *Gerringer v. Ins. Co.,* 133 N. C., 407; *Clapp v. Ins. Co.,* 126 N. C., 388; *Grabbs v. Ins. Co.,* 125 N. C., 389. If it is essential for an underwriter to know by what title the insurer holds the property insured, that inquiry should be made at the time of issuing the policy, and not deferred until after the loss has occurred. Beach on Law of Insurance, vol. 1, sec. 406.

The defendant next contends that the giving of the mortgages was such a change of title and interest of the assured as avoided the policy, unless assented to by it in the manner prescribed by the policy.

It is well settled by the decisions of this Court—differing from the courts of some of the States—that the giving of a mortgage effects such a change of title and interest of the assured as avoids the policy when not assented to by the insured in the manner prescribed by the policy. *Sossamon v. Ins. Co.,* 78 N. C., 145; *Biggs v. Ins. Co.,* 88 N. C., 141; *Gerringer v. Ins. Co.,* 133 N. C., 407; *Hayes v. Ins. Co.,* 132 N. C., 702; *Weddington v. Ins. Co.,* 141 N. C., 234. "In some of the States a mortgage is held by statutory regulation or judicial construction to be simply a lien, leaving the legal estate in the mortgagor. In North Carolina and many other States the common law prevails, and the mortgage deed passes the legal title at once, defeasible by the subsequent performance of its conditions." *Hinson v. Smith,* 118 N. C., 503; *Moore v. Hurtt,* 124 N. C., 27; *Carter v. Slocumb,* 122 N. C., 475; *Collins v. Davis,* 132 N. C., 106; *James v. Railroad,* 121 N. C., 523; *Parker v. Beasley,* 116 N. C., 1; *Hemphill v. Ross,* 66 N. C., 477; *Williams v. Teachey,* 85 N. C., 402; Mordecai's Law Lectures, pp. 534-539.

In *Weddington v. Ins. Co., supra,* this Court said: "The validity of a provision in a policy of insurance against the creating of encumbrances without the consent of the insurer can hardly be contested at this late day. It has now become the settled doctrine of the courts that the facts in regard to title, ownership, encumbrances and possession of the insured property are all important to be known by the insurer, as the character of the hazard is often affected by these circumstances." The execution of the mortgages upon the insured property without the consent or knowledge of the insurer, attested in the way prescribed by the policy, clearly, therefore, avoids the policy, and was undoubtedly a cause of forfeiture of its benefits, unless the defendant, by its acts, conduct and statements, waived the effect of the mortgages, and is estopped to assert its forfeiture. We will here briefly state the facts presented and relied upon by the plaintiff to constitute the waiver and estoppel: Swindell, the adjuster of defendant, said to plaintiff, while the loss was being adjusted: "We found some mortgages on the property which would bar from collecting it. Our company is willing, though, to pay the claim, and I will take it up with them and make it all right." This conversation occurred on 29 May. On 5 June plaintiff made out his proof of loss and mailed it to the defendant at its head office in Raleigh, N. C. The value of the property de-

MODLIN *v.* INSURANCE COMPANY.

stroyed was fixed at $1,517; the insurance was $500. On 6 June the defendant wrote plaintiff: "We are in receipt of proof of loss, properly signed, and we are sending to-day to our agents at Tarboro draft for $495, and presume they will communicate with you in regard to the matter." On the same day the defendant wrote a similar letter to the bank at Windsor, the holder of the first mortgage on the insured property and also the holder of the policy of insurance as security for the debt secured by the mortgage. The defendant, in its answer, admits that it did prepare a draft for the amount of the appraised value of said property, viz., $495, and sent it to its local agents at Tarboro, to be delivered to the plaintiff, upon certain conditions to be performed by the plaintiff; that said conditions were not performed by the plaintiff, and defendant withdrew the draft. It developed in the evidence that the conditions referred to were these: The Orren-Williams-Weddell Company, defendant's agents at Tarboro, had accounted to defendant, for the premium on the policy, but had not collected the premium from the plaintiff, and it was still due the agents. At the time of the adjustment of the loss Williams, of the Tarboro agents, was present, and the plaintiff directed the amount due these agents to be deducted from the appraised loss and that the check be sent these agents for this purpose. The Windsor Bank objected to the payment of the Tarboro agents, as the policy was held by it as collateral to secure the mortgage debt, and the entire amount was needed to pay its debt. As a result of this contention the defendant withdrew the check and this litigation resulted.

The defendant objected to the introduction of its correspondence showing the above facts. We think the evidence competent. It gives the acts, conduct and statements of the defendant relied upon to prove waiver of the forfeiture. The defendant contends, however, that the evidence relied upon to prove waiver is insufficient, for three reasons, to-wit: (1) For that the acts, conduct and statements, of themselves, are insufficient; (2) for that the provisions of the policy prevent this result, because the defendant's consent was not attached, in writing, to the policy; (3) for that during the adjustment a nonwaiver agreement, which is copied in the preceding statement of the case, was signed, and this prevents the waiver. In passing upon these defenses it is essential to keep in mind that the acts, conduct and statements relied upon to prove the waiver are the acts, conduct and statements of the *defendant* itself—not of its adjuster, special agent, local agent or officer. In the paragraph herein quoted the defendant answers that *it* did the acts. The sending of the draft was *its* act; the notification to plaintiff of the check was

*its* act; the condition imposed upon plaintiff to pay his debt to *its* agent, as he had promised, was *its* act. In *Black v. Ins. Co.,* 148 N. C., 169, the act relied upon to constitute waiver was the act of a local agent. The consent of the company was not written upon or attached to the policy, and this Court said: "They (the words 'written upon or attached hereto') are not intended to restrict the powers, express or implied, of *general or local agents,* but to prescribe an invariable rule of evidence by which this conduct must be proven to bind the company." (Italics ours.) In *Hayes v. Ins. Co.,* 132 N. C., 702, the act relied upon was the act of a local agent.

The principle applicable to the facts of this case has been very clearly and accurately stated in *Titus v. Ins. Co.,* 81 N. Y., 410, at p. 419, as follows: "When there has been a breach of a condition contained in an insurance policy, the insurance company may or may not take advantage of such breach and claim forfeiture. It may, consulting its own interests, choose to waive the forfeiture, and this it may do by express language to that effect, or by acts from which an intention may be inferred or from which a waiver follows as a legal result. A waiver cannot be inferred from its mere silence. It is not obliged to do or say anything to make the forfeiture effectual. It may wait until claim is made under the policy, and then, in denial thereof, or in defense of a suit commenced therefor, allege the forfeiture. But it may be asserted broadly that if, in any negotiations or transactions with the insured, after knowledge of the forfeiture, it recognizes the continued validity of the policy or does acts based thereon, or requires the insured by virtue thereof to do some act or incur some trouble or expense, the forfeiture is as a matter of law waived." *Ins. Co. v. Norton,* 96 U. S., 234; *Horton v. Ins. Co.,* 122 N. C., 498; *Collins v. Ins. Co.,* 79 N. C., 279.

Can there be any stronger facts of the recognition of the continued validity of a policy than for the insurer, after adjustment and appraisal of loss and the receipt of proof of loss, to send its draft or check to its local agent, to the amount of the appraised loss, notify the assured and the holder of the first mortgage, after knowledge of the encumbrance, with the condition not communicated to the assured, but to its local agents, that the local agents must reserve the amount of premium due them by the assured and which the assured had previously notified the local agent they could deduct? Why did the defendant send its check, unless it recognized the continued validity of the policy? Was not this act based thereon? And in all this not a word of forfeiture or that the policy was void! We are therefore of the opinion that the evidence was clearly sufficient to

prove a waiver by and an estoppel upon the defendant, and that there is nothing in the provisions of the policy which prevents the defendant itself from failing to take advantage of forfeitures in its favor. Does the nonwaiver agreement relieve the defendant from acts and statements binding upon it? It is doubtful if this nonwaiver agreement added to the protection of the defendant, as provided in the policy. The provisions of the policy, it would seem, have sufficiently protected the defendant from all acts of its agents, whether deliberately or inadvertently done. It provides: "This company shall not be held to have waived any provision or condition of this policy, or any forfeiture thereof, by any requirement, act or proceeding on its part relating to the appraisal or any examination herein provided for." The "examination herein provided for" embraces proof of loss, exhibiting by the assured all that remains from the fire, submitting by the assured to examination, under oath, by any person designated by the company, and the producing of all books, accounts, etc., and the submission to appraisers of the amount of loss in case of disagreement." It seems to comprehend every matter occurring in the ascertainment of the loss. But, giving to the nonwaiver agreement the fullest scope of protecting the defendant against a waiver by anything said or done by its agent at the time of or during "the investigation of the claim and determination of the amount of the loss or damage," and that whatever was done to effectuate this purpose was done "without prejudice to any rights or defenses which said party of the second part (the company) may have," we do not see how this can protect the defendant from the effects of its own act, conduct and statements, done and made afterwards, with full knowledge of all that the investigation of the claim and determination of the loss disclosed, with a full knowledge of all its rights and defenses and a knowledge of the causes of avoidance.

A nonwaiver agreement very similar to this one was presented to the Court of Appeals of Missouri in the case of *Rudd v. Ins. Co.,* 120 Mo. App., 1, and in discussing its effect the Court said: "The document provided merely that any action taken by the insurance company in investigating and ascertaining the cause of the fire and the amount of damage done should not create a waiver or invalidate any of the conditions of the policy. It is not clear that an investigation of those matters would waive forfeiture had no nonwaiver writing been taken." In *Hayes v. Ins. Co.,* 132 N. C., 702, this Court, in speaking of the effect of a nonwaiver agreement, quite as comprehensive as the one now being considered, said: "The plaintiff, however, relies upon the fact that the agent of the company went out to investigate the loss

and determined the amount of damages from fire to be $679. But whatever inference of waiver might otherwise be drawn from such circumstance is negatived, not only by a stipulation in the policy that such an investigation, in case of loss, should not be deemed a waiver of any objection to the liability of the company under the policy, but before making this investigation the insured and the agent of the company entered into a written agreement that such investigation and ascertainment 'should not waive or invalidate any of the conditions of the policy' or any rights whatever of either of the parties, but was merely to avoid unnecessary delay to the plaintiff, and should not be taken in anywise as an acknowledgment of liability on the part of the company."

The ultimate effect, then, of the nonwaiver agreement was to leave the company free and unrestrained to determine its course in regard to the settlement of the damages, possessed of all the facts acquired by its agents in the investigation of the plaintiff's claim and the amount of the loss by fire. Its nonaction or silence thereafter could not have been construed against it as a waiver or estoppel. But, possessed of abundant information to determine its course, it became active—sent its draft in full payment and notified plaintiff and the first mortgagee, as narrated herein. It seems to us that it should be bound by this course, by every principle of good faith.

The last contention of the defendant is that the plaintiff delayed longer than is permitted by the policy contract in bringing this action. We do not think this contention can be sustained. The fire occurred 24 May, 1907; the proofs of loss were filed and accepted 6 June; the amount of damages sustained ascertained 29 May; summons issued 22 June, 1908. The provisions of the policy, to-wit, "and the loss shall not become payable until sixty days after the notice, ascertainment, estimate and satisfactory proof of loss herein required have been received by this company," and "no suit or action on this policy for the recovery of any claim shall be sustainable in any court, law or equity, until after full compliance by the insured with all the foregoing requirements, nor unless commenced within twelve months next after the fire," will be construed with this limitation in section 4809, Revisal, to-wit, "nor shall it limit the time within which such suit or action shall be commenced to less than one year after the cause of action accrued."

These provisions of the policy and of this section of the Revisal have been construed and the conclusion reached contrary to this contention of the defendant in the following cases: *Muse v. Assurance Co.*, 108 N. C., 240; *Lowe v. Acc. Assn.*, 115 N. C.,

18; *Dibbrell v. Ins. Co.,* 110 N. C., 193; *Gerringer v. Ins. Co.,* 133 N. C., 407.

The matters constituting waiver or estoppel are sufficiently set out in the complaint, especially in view of the fact that the defendant did not move for greater particularity; and, without objection, the parties seemed to be satisfied to present all of their contentions arising upon the pleadings under two issues—the first, an issue of indebtedness; the second, as to the bar of the action by delay in its commencement; and it is apparent that a judgment could be rendered upon the verdict determinative of the rights of the parties to this litigation. After a careful examination of the exceptions presented, aided by the able briefs and arguments of counsel, we are of the opinion that there was no reversible error committed in the trial below, and the judgment is

Affirmed.