MOZELLE SASSER v. PILOT FIRE INSURANCE COMPANY.

(Filed 28 September, 1932.)

1. **Insurance M e—Denial of liability is waiver of proof of loss.**

   By denying liability for a loss under a policy of fire insurance the insurer waives the provisions of the policy requiring the insured to file notice and proof of loss.

2. **Insurance K e—Agreement as to amount of loss stipulating it should not operate as waiver held not waiver of violation of conditions.**

   The provision in a policy of fire insurance written in accordance with the standard statutory form, C. S., 6437, that the policy should be void if the insured was not the unconditional owner of the property in fee simple or if foreclosure proceedings were instituted against the property with knowledge of the insured is not waived by a written agreement signed by the insured and the adjuster for the insurer expressly providing that the agreement was solely for the purpose of determining the loss and to save time to the parties and that it should not operate as a waiver of any conditions or provisions of the policy.

**3. Same—Evidence of admissions by adjuster, a special agent, held insufficient to show waiver by insurer of conditions of policy.**

Where a policy of fire insurance provides that none of its conditions or provisions should be waived except those subject to agreement and then only by a written waiver attached to the policy itself, evidence that the adjuster for the insurer stated after a disclosure of the facts constituting a violation of a condition of the policy that the company would pay the claim is not sufficient to overrule the insurer's motion as of nonsuit, there being no evidence that the adjuster, a special agent, had authority to make such agreement or that the insurer had waived the violation through any authorized agent, there being evidence that the insurer denied liability immediately upon receipt of the adjuster's report.

APPEAL by defendant from *Harris, J.,* at Spring Term, 1932, of WAYNE. Reversed.

This is an action to recover on a policy of fire insurance by which a two-story dwelling-house owned by the plaintiff was insured by the defendant against loss or damage by fire, in a sum not exceeding $2,000.

It was admitted in the pleadings that the house covered by the policy of insurance was destroyed by fire while the policy, according to its terms, was in full force and effect.

It was further admitted in the pleadings that after the policy was issued, and before the fire, there were violations by the plaintiff of certain provisions of the policy, which, according to its express terms, rendered the policy void and released the defendant from liability thereon.

Plaintiff alleged in her reply to the answer of the defendant that after the fire defendant waived the forfeiture of the policy by reason of the admitted violations of its provisions. This allegation was denied by the defendant in its rejoinder.

The issues submitted to the jury were answered as follows:

"1. Did the defendant waive the violations of the policy set forth in the answer? Answer: Yes.

2. If so, what amount is the plaintiff entitled to recover? Answer: $2,000."

From judgment that plaintiff recover of the defendant the sum of $2,000, with interest and costs, the defendant appealed to the Supreme Court.

*Kenneth C. Royall and Andrew C. McIntosh for plaintiff.*

*Brooks, Parker, Smith & Wharton and Langston, Allen & Taylor for defendant.*

CONNOR, J. The policy of insurance sued on in this action was issued by the defendant on 11 December, 1929. It is in the form prescribed by

statute as the "Standard Fire Insurance Policy of the State of North Carolina." C. S., 6437. By its terms and subject to its provisions, a two-story dwelling-house located on a lot just outside the corporate limits of the town of Clayton, N. C., was insured against loss or damage by fire in a sum not to exceed $2,000. This house and lot was owned by the plaintiff at the date of the issuance of the policy. While the policy was in force according to its terms, the house was completely destroyed by fire. The fire occurred at about 1:30 on the morning of 30 May, 1931. At the date of the fire the house was vacant, the tenant who had occupied the same having moved out the day before the fire. On the morning after the fire, the plaintiff notified the local agent of the defendant at Clayton of her loss. The local agent thereupon reported the loss to the defendant at its home office in Greensboro, N. C. The defendant by letter requested the Fire Insurance Companies' Adjustment Bureau of Raleigh, N. C., to make an adjustment of the loss. Thereafter, on or about 15 June, 1931, J. P. Watters, an employee of the Bureau went from Raleigh to Clayton and, accompanied by John T. Talton, the local agent of the defendant at Clayton, called upon the plaintiff at her home. The local agent informed the plaintiff, that J. P. Watters was the adjuster of the defendant, and had called to adjust her loss. Before negotiations were entered into by and between the said J. P. Watters and the plaintiff, a paper-writing was signed by each of them, in words as follows:

### "NON-WAIVER AGREEMENT.

It is hereby mutually stipulated and agreed by and between Mrs. Mozelle Sasser, party of the first part, and the insurance companies whose names are signed hereto, party of the second part, that any action taken, request made, or any information now or hereafter received by said party of the second part, on or while investigating and ascertaining the cause of fire, the amount of loss or damage, or other matter relative to the claim of the said party of the first part for property alleged to have been lost or damaged by fire on 30 May, 1931, shall not in any respect or particular change, waive, invalidate or forfeit any of the terms, conditions, or requirements of the policies of insurance of the party of the second part held by the party of the first part, or any of the rights whatsoever of any party hereto.

The intent of this agreement is to save and preserve all the rights of the parties and permit an investigation of the claim and determination of the amount of loss or damage in order that the party of the first part may not be unnecessarily delayed in business, and that the amount

of . . . claim may be ascertained and determined without regard to the liability of the party of the second part and without prejudice to any rights or defenses which said party of the second part may have.

Pilot Fire Insurance Company,
By J. P. Watters, Adjuster.
Mrs. Mozelle Sasser."

After the said paper-writing had been signed by the parties thereto, and after negotiations between said parties pursuant thereto had been completed, another paper-writing was signed by said parties in words as follows:

"AGREEMENT AS TO SOUND VALUE AND LOSS AND DAMAGE.

In consideration of the mutual benefits to be derived herefrom, it is expressly understood and agreed by and between the parties whose signatures are affixed hereto that this agreement is a separate and distinct agreement between Mrs. Mozelle Sasser and each of the undersigned insurance companies, and it is further agreed that at the time of the fire occurring on 30 May, 1931, the total sound value of the property belonging to Mrs. Mozelle Sasser and described in the respective policies of said undersigned insurance companies is, after a complete examination, agreed upon and determined to be $3,217.50, and that the loss and damage to said property by reason of said fire is understood and agreed to be $2,000, which said sums as herein agreed to and above set out are binding and conclusive upon all parties hereto as to the amount of sound value and amount of loss and damage only, with the expressed understanding that no liability is fixed hereby, and that this agreement does not in any sense waive formal proofs of loss or any of the conditions or provisions of the policies of said insurance companies.

The sole purpose of this instrument is to evidence the agreement between the parties hereto as to the sound value and loss and damage.

In testimony whereof, the said parties have hereto executed this agreement in duplicate, and set their hands and affixed their seals, this 15 June, 1931.

Pilot Fire Insurance Company,
By J. P. Watters, Adjuster.
Mozelle Sasser."

After the issuance of the policy sued on in this action, and while the same was in full force and effect, the plaintiff conveyed the lot on which the house insured thereby was located, by a mortgage deed which was duly recorded in the office of the register of deeds of Johnston County.

Default having been made by the plaintiff in the payment of the debt secured by said mortgage, at its maturity, the house and lot conveyed by said mortgage was sold on 23 May, 1931, under the power of sale contained therein. At said sale the highest bid for said property was $200.00. Plaintiff knew that the house and lot had been advertised for sale, and had been sold under the power of sale in the mortgage prior to the date of the fire; she did not notify defendant that she had conveyed the property covered by the policy of insurance, by the mortgage, or that said property had been advertised and sold under the power of sale contained in the mortgage executed by her, after the issuance of the policy. Defendant had no knowledge of these matters until after the fire.

Among other provisions in the policy are the following:

"This entire policy shall be void, unless otherwise provided by agreement in writing added hereto, (a) if the interest of the insured be other than unconditional and sole ownership, or (b) if the subject of insurance be a building on ground not owned by the insured in fee simple, or (c) if, with the knowledge of the insured, foreclosure proceedings be commenced, or notice given of sale of any property insured hereunder by reason of any mortgage or deed of trust."

"No one shall have power to waive any provision or condition of this policy except such as by the terms of this policy may be the subject of agreement added hereto, nor shall any such provision or condition be held to be waived unless such waiver shall be in writing added hereto, nor shall any provision or condition of this policy or any forfeiture be held to be waived by any requirement, act or proceeding on the part of this company relating to appraisal or to any examination herein provided for; nor shall any privilege or permission affecting the insurance hereunder exist or be claimed by the insured unless herein granted or by rider added hereto."

The plaintiff offered evidence tending to show that after the nonwaiver agreement, and the agreement as to sound value and loss and damage, had been signed by the parties thereto, the adjuster, J. P. Watters, referring to the mortgage executed by the plaintiff after the issuance of the policy, and to the foreclosure of said mortgage by sale of the property conveyed thereby, on 23 May, 1931, said: "We will pay your insurance anyhow. Your check will be at the bank Friday afternoon." Defendant in apt time objected to this evidence, and excepted to the overruling by the court of its objections. The adjuster, J. P. Watters, did not testify as a witness at the trial. He had died before the trial. John T. Talton, the local agent of the defendant, who was present at all times during the negotiations between the plaintiff and J. P. Watters, testified that

nothing was said to the plaintiff by J. P. Watters about sending a check to pay the amount of her loss; that the said J. P. Watters told the plaintiff that he would make his report to the defendant, and that if the defendant was willing to pay the loss, it would send proofs of loss for her signature, and that the loss would not be paid until the execution by plaintiff of proofs of loss.

After the defendant received the report of J. P. Watters, its adjuster, it denied liability on the policy and declined to pay plaintiff's claim thereon. No proofs of loss, signed by the plaintiff, were filed with the defendant prior to the commencement of this action.

The failure of the plaintiff to file with the defendant proofs of loss, signed by her, as required by the policy, was not a sufficient ground to sustain defendant's motion for judgment as of nonsuit. The defendant had denied liability on the policy, and had thereby waived the filing of proofs of loss by the plaintiff. There is no contention by the defendant to the contrary on this appeal. See *Proffitt v. Insurance Co.,* 176 N. C., 680, 97 S. E., 635.

The defendant does contend, however, that there was no evidence at the trial of the action tending to show a waiver by it of the admitted violations of provisions of the policy, which according to its express terms rendered the policy void. This contention is sustained by the decision of this Court in *Hayes v. Insurance Co.,* 132 N. C., 702, 44 S. E., 404. In that case it is held that the commencement of foreclosure proceedings against the insured property terminates the policy, there being in the policy a provision to that effect. With reference to the plaintiff's contention in that case that there was evidence tending to show a waiver by the defendant of the provision with respect to the effect of the foreclosure proceeding upon the policy, it is said by *Clark, C. J.:*

"The plaintiff, however, relies upon the fact that the agent of the company went out to investigate the loss, and determined the amount of damages to be $679.00. But whatever inference of waiver might otherwise be drawn from the circumstances is negatived, not only by a stipulation in the policy that such investigation, in case of loss, should not be deemed a waiver of any objection to the liability of the company under the policy, but before making this investigation the insured and the agent of the company entered into a written agreement that such investigation and agreement should not waive or invalidate any of the conditions of the policy, or any rights whatever of either of the parties, but was merely to avoid unnecessary delay to the plaintiff, and should not be taken in any wise as an acknowledgment of liability on the part of the company. This agreement was reasonable and the considera-

tion—saving delay to the plaintiff—is not only apparent, but is recited in the agreement itself."

There was no evidence tending to show that the adjuster, who was a special agent of the defendant, with power only to adjust the loss, was authorized to pay the loss, or to admit defendant's liability for the loss. All the evidence was to the contrary. Upon its receipt of the report of the adjuster, at its home office, the defendant promptly denied liability. The instant case is distinguishable from *Modlin v. Insurance Co.,* 151 N. C., 35, 65 S. E., 605, where the insurance company, after its receipt of the report of its agent showing a violation of the policy, and after the insured had filed proofs of loss, issued a draft for the payment of the loss. This was the act of the insurance company, and not of its special agent, who had no authority to admit the company's liability for the loss. It was held in that case that the defendant, by its own act, had waived the violation of its policy.

There was error in the refusal of the court to allow defendant's motion for judgment dismissing the action as of nonsuit. For this reason the judgment is

Reversed.